STATE EX REL. HIGHWAY COMMISSION OF MISSOURI, APPELLANT, v. JOHN S. WILLIAMS ET AL., RESPONDENTS.—51 S. W. (2d) 538.

Kansas City Court of Appeals.    May 23, 1932.

Certiorari denied July 7, 1932.

*John W. Mather, Jean Paul Bradshaw* and *John C. Collet* for appellant.

*James S. Simrall* and *Lucien J. Eastin* for respondent.

TRIMBLE, P. J.—Appeal from a condemnation proceeding in the circuit court of Clay county, brought to that court on change of venue

from Platte county, wherein plaintiff, the State Highway Commission, sought to condemn, for hard surfaced highway purposes, a strip of land, containing 15.95 acres, across defendants' 560-acre farm in said last named county. In addition to the right of way wanted, certain borrow pits along the right of way were also sought which, with the roadway, made up the 15.95 acres.

Commissioners appointed by the circuit court of Platte county, viewed the land and made a report awarding "no damages," evidently considering the special benefits as at least equalling the value of the land actually taken and the damages to the farm by the taking. The defendant owners filed exceptions to the report, a change of venue was asked and granted, and the case was tried, all as above stated, resulting in a verdict assessing defendants' damages at $1500, from the judgment on which, the plaintiff Highway Commission has appealed.

As located, the strip condemned for highway purposes cuts off from the rest of the farm one tract of 9 and 3/10 acres and another of 29 and 3/10 acres. The evidence is that as to *both* the 9 and 3/10 acres and the 29 and 3/10 acres, in addition to being cut off from the rest of the land, the difficulty of farming these tracts in the sharp-pointed shape they are left in and other conditions, they are damaged from a third to a half of their value; taking the entire tract of 560 acres, it was worth $125 to $135 per acre before the road was located through it and worth only $115 an acre after that. The location of the road in the place it was would compel the erection of fences and it could not be pastured in the way it had been theretofore done, the fences amounting to two miles; that the cost of such extra fencing would be added at the rate of $40 per 80 rods; that the two tracts cut off would be unprofitable to farm because of their irregular shape, etc.; that the depreciation of the entire farm would be $10 per acre; that the location of the roadbed would retain the water on the land north of the road; some evidence was to the effect that, after the road was put through, the farm would be worth $20 per acre less; and the two tracts cut off would be difficult to sell, etc. In fine, there was abundant evidence that the farm was damaged considerably more than the amount recovered; that the value of the land actually taken was $125 per acre amounting to $1993.75. Some criticism of the witnesses is made on the ground that they could not know values of land, but, of course, as there was evidence that they did, that was a matter for the trial judge and the jury to pass on, the judge to decide whether the witnesses were competent and qualified to testify on that subject, and the jury to determine the weight and value of their testimony. We cannot determine either of those matters, nor can we arrive at a decision of what to do with this case by peering into them.

It is the contention of plaintiff that the landowners have been more than compensated for the land by the *special benefits* accruing to the remainder of the land by reason of the location of the hard surfaced highway through, or adjacent to, it. Part of the special benefits are claimed to arise by reason of affording an easier access to portions of the land through the construction by the Highway Commission of a bridge across a creek, the bridge affording a readier access to that part of the farm lying south of the new highway. As to the highway affording a better access to the farm as a whole, the evidence in plaintiff's behalf was that there was no lack of ready and easy access to the farm before this highway was established. One tenant who had lived in the "East house" on the farm said that there was a road on the east and one on the south, the east road being the one that went across the creek and he used that a great deal, especially in going to the town of Dearborn about a mile and a half away; that no difficulty was had by any one who wanted to "go through there" or who had farm land there. Other evidence showed that on the east, road No. 71 was already there, and the one on the north was an ordinary dirt road, considered a "pretty good road, though not oiled, men travelled thirty-five or forty miles per hour on it.

The evidence of plaintiff, in attempting to show special benefits, was to the effect that the landowners had experienced difficulty in getting to the outlying portions of their farms because of having to cross Bee Creek and Bezzard Branch, but that the Highway Commission has constructed over the former a concrete bridge of three 50-foot spans, and over the latter, at a point where the water was 20 feet deep, a concrete bridge at a cost of nearly $9000; also that two culverts, about 32 feet in length had been installed to take care of the drainage of the bottom land, and also that the new highway 80 feet wide, with an 18-foot concrete slab along the center thereof tended to establish special benefits to the landowners "because of the proximity of this hard surfaced high-type state highway." Because of these things witnesses for plaintiff thought the remainder of the farm had been enhanced in value all the way from $10 to $40 per acre, and one of plaintiff's witnesses was of the opinion that the farm had been enhanced $3000 in value. It is not at all certain, however, from all such testimony (indeed, in at least some of the witnesses' testimony, it was rather manifest to the contrary), that the witnesses for plaintiff were not, consciously or unconsciously, including *general* benefits along with special benefits, in their estimates of the enhancement.

Plaintiff urges that Instruction No. 2 is erroneous in that it refers to defendants' Instruction No. 1 for a definition of what is "peculiar or special benefits" which plaintiff says is erroneous because it *excludes,* from the special benefits to be deducted, such

benefits as are not *alone special* to defendants but are *also special* to a few other landowners. We were a little curious to know why error should be charged against No. 2 when, if there is any error, it is in Instruction No. 1, Instruction No. 2 being erroneous, if at all, *only* because of the claimed error in No. 1. An examination of the record, however, disclosed that the record states affirmatively that plaintiff "did not object" to the giving of Instruction No. 1, hence plaintiff is not in a position to complain of *it* as being erroneous but charges error against No. 2 in that it referred to No. 1 and was, therefore, erroneous because No. 1 contained error. In other words, at the trial, Instruction 1 was *unobjectionable,* but, in the appellate court, it is *erroneous.* This would seem to be somewhat anomalous. However, we prefer not to dispose of the point solely on this ground.

An examination of Instruction No. 2 does not mention or refer specifically to Instruction *No. 1* for a definition of the terms "peculiar or special benefits," but refers expressly to *"other instructions,"* as will appear from a view of Instructions Nos. 1 and 2. They are as follows:—

"No. 1.

"You are instructed that the sole question for your determination in this case is the amount of damages, if any, the defendant will suffer as the result of the action of the State Highway Commission in taking the tract of land proposed to be taken and the damages, if any, resulting to that part of defendant's land not taken. You will, in estimating the damages, if any, find the quantity and value of the land taken by the State Highway Commission for a right-of-way and the damages, if any, to the whole tract by reason of the road running through it, and deduct from these amounts the benefits, if any, peculiar to the said tract of land, arising from the running of the road through the same; and by peculiar benefits to that land, is meant such benefits as that land derives from the location of the road through it, as are not common to the other lands in the same neighborhood. The peculiar benefits, if any, as herein mentioned, must be such as result to the entire tract or farm of defendant, in particular, and not the general benefits accruing to it, in common with other lands or farms in the immediate neighborhood of defendant's said tract or farm, or of said proposed road.

"No. 2.

"The court instructs the jury that the burden is upon the plaintiff in this action to prove by the preponderance or greater weight of the evidence that the lands of the defendant remaining after the particular tract sought to be condemned has been taken out, have received peculiar or special benefits, as those terms have been de-

fined in other instructions in this case, and unless you find that the plaintiff has so proven such peculiar or special benefits you will not allow such benefits against the damages which you may find, if any, the lands of the defendant have sustained. By the terms burden of proof and preponderance of the evidence, as used in this instruction, the court does not refer to the number of witnesses sworn on either side, but means that, in point of value and credibility, the evidence to sustain such peculiar or special damages must outweigh that for the defendant; and the jury are the sole judges of the credibility of the witnesses and the weight and value to be given to their respective statements.''

Hence No. 2 does not refer to Instruction No. 1 *alone* for a definition of peculiar or special benefits but to *all* instructions containing any explanation or definition of such terms. .

Plaintiff's Instruction No. 6 also contains a definition of such terms, and it would seem that, if defendants' definition in No. 1 was erroneous, plaintiff's Instruction No. 6 is likewise erroneous. It reads as follows:—

"No. 6.

"The jury will consider the benefits, if any, resulting to the remainder of defendant's (exceptor's) said property from the appropriation by the plaintiff of the strip and borrow pits in question for highway purposes. The benefits to be considered and allowed by the jury are the direct and peculiar benefits, if any, which result to the remainder of defendant's said property and not the general benefits which the defendant derives in common with the other landowners in the vicinity from the establishment of the highway.''

And in it, the definition of special benefits to be considered and allowed by the jury ''are the direct and peculiar benefits, if any, which result to the remainder of defendants' said property, and not the general benefits which the defendant derives in common with the other landowers in the vicinity from the establishment of the highway.''

The definition or statement of the distinction between general and special benefits in defendants' Instruction No. 1 is essentially, though perhaps not verbally, the same. It is as follows:—

''You will, in estimating the damages, if any, find the quantity and value of the land taken by the State Highway Commission for a right-of-way and the damages, if any, to the whole tract by reason of the road running through it, and *deduct from these amounts the benefits,* if any, *peculiar to the said tract of land* arising from the running of the road through the same; and *by peculiar benefits* to the land, is meant *such benefits as that land derives from the location of the road through it, as are not common to the other lands in*

*the same neighborhood.* The *peculiar benefits,* if any, as herein mentioned, must be such as result to the entire tract or farm of defendants, *in particular,* and *not the general benefits accruing to it, in common with other lands or farms in the immediate neighborhood of defendants' said tract or farm, or of said proposed road.''*

The definition contained in the two instructions are, in legal meaning and effect, the same. If there is any difference at all between the two, the one in Instruction No. 1 is as good if not better than the one in plaintiff's Instruction No. 6. As Instruction No. 2, the one complained of, did not specially refer to Instruction No. 1, but to ''other instructions'' this reference included all instructions on that subject. Hence plaintiff cannot now contend that the jury were misled by the reference in No. 2. If No. 1 contained error, No. 6 contained it also. Plaintiff cannot be allowed to complain of error which it invited or in which it joined.

Again, plaintiff asked and obtained Instruction No. 8 which reads as follows:—

''No. 8.

''If you believe and find from the evidence that the lands of the defendant mentioned in the evidence are especially benefited, as defined in these instructions, and that the amount of such special benefits equals or exceeds the total amount that you may find the defendant is entitled to as compensation for the land taken and damages, if any, done to his lands not taken, then you will find for the plaintiff and your verdict may be in the following form,'' etc.:

As will be seen, this instruction makes the same reference to *other instructions* (which can only include Instructions No. 1 and No. 6) as does the attacked Instruction No. 2. The phrase ''these instructions'' in No. 8 is the same as ''other instructions'' in No. 2, since the instructions were all submitted to the jury as one series numbered from one to nine without disclosing that the first four were asked by defendants and the last five by plaintiff.

There is no question but that, if there are any other *special* benefits including those arising from the adjacent proximity of 'the road, which may also be *specially* enjoyed by other landowners in the vicinity, these special benefits should not be disregarded in reducing the damages. But if there be error in Instruction No. 2 in this regard, it was error joined in and invited by plaintiff and, therefore, no reversal can be had because of this fact.

It would seem, however, that as the instructions were all in one series, if the jury could have been misled to believe that they should not deduct special benefits which were also special to other lands, such impression would have been removed or cleared away by Instruction No. 7 which reads as follows:—

"No. 7.

"If you believe from the evidence that the lands of defendant are *specially benefited,* as defined in these instructions, by the location of the public highway through it as proposed, then the fact, if you find it to be a fact, that *other lands* through or along which said road runs may *also be specially benefited* in like manner will not justify you in *disregarding the special benefits* done to defendant's lands." [Italics ours.]

It is no doubt true, as said Rives v. Columbia, 80 Mo. App. 173, l. c. 179:—

"A special benefit does not necessarily mean such benefit as is enjoyed by one piece of property. Many pieces, belonging to different owners, may be similarly situated with reference to an improvement and yet fall far short of being all the property in the vicinity. Whenever a benefit is common to all in a vicinity, it is special to none; and it does not follow that a benefit may not be special to several without being common to all."

This was approved by the Supreme Court in State ex rel. v. Jones, 15 S. W. (2d) 338, l. c. 340. This same decision at the close of page 339 and top of page 340 cites the instruction in Quincy, M. & P. R. Co. v. Ridge, 57 Mo. 597, l. c. 601, and calls it a classic. This Jones case was decided February 28, 1929, while the case at bar was tried June 19, 1929. And it was tried, it seems to us, in conformity to the principles announced in the Jones case. In this last named case, the trial court had instructed the jury that they should deduct such benefits peculiar to the land *"alone"* arising from the running of the road through it and that "by peculiar benefits is meant such benefits as that land *alone* derives from the location of said road through it, as are not common to the other lands in the same neighborhood through which the road runs." The Instruction No. 1 in the case at bar seems to avoid the error in the Jones case, for it directs the deduction of the "benefits, if any, peculiar to the said tract of land, arising from the running of the road through the same; and by peculiar benefits to that land is meant such benefits as that land derives from the location of the road through it, as are not common to the other lands in the same neighborhood." The phrase "not *common* to the *other lands* in the same neighborhood" would seem to mean not common to *all* the lands in the neighborhood. The instruction avoids the vice of the instruction in that it recognizes as special benefits those arising from the *location* of the road through or adjacent to it (which the Jones instruction did not), and nowhere excludes the special benefits that may also accrue specially to other landholders.

It is further urged that the court, by his rulings on the admission of evidence, indicated his view that special benefits could be **only**

such as were enjoyed by defendants' tract *alone*. The trouble with this claim is that the adverse rulings were not made because of the trial court's idea that only benefits peculiar to defendants' land *alone* could be considered as special, but because the evidence showed that *general* benefits were being askd for and confused with, and sought to be included as, special benefits. To rule otherwise would destroy all distinction between general and special benefits and both would have been deducted from the damages. Where the matter asked about did involve special benefits the court allowed full investigation. The court interfered only when *general* benefits were being used in an attempt to offset the damages.

Error is complained of in the giving of defendants' Instruction No. 3 which is as follows:—

## "No. 3.

"The jury, in determining the decrease, if any, in the value of defendant's farm caused by the construction of the highway through the same as shown by the evidence, will take into consideration the manner in which said farm is to be divided by the construction of said road, the disfigurement, if any, to the farm as a whole, and generally all such matters, owing to the peculiar location of the road through defendant's farm, as may, in the judgment of the jury and from the evidence in the case, affect the convenient use and future enjoyment of the farm, considered as a whole, in so far as they affect the market value thereof."

The claim is that this instruction *assumes* a controverted fact. If it does, it is erroneous, and authorities are not needed to support the proposition. But we fail to see where such assumption is made. The objection apparently seems to be that, in telling the jury what are the proper matters, or bases, on which damages are to be estimated, the court, in Instruction No. 3, used these words: "The jury, in determining the decrease, if any, . . . will take into consideration the manner in which said farm is to be divided by the construction of said road, the disfigurement, if any, to the farm as a whole, and generally all such matters, owing to the *peculiar location of the road through defendants' farm*, as may, in the judgment of the jury and from the evidence in the case, affect the convenient use and future enjoyment of the farm, considered as a whole, in so far as they affect the market value thereof."

The claimed vice in the instruction is that it *assumes* that the location of the road through the farm is *peculiar* in the sense that it is "unusual," "singular," "rare," "strange," "odd," or "queer." But this word "peculiar" has other meanings than these. Indeed, the *first* meaning given in the Standard Dictionary is "particular" or "specific," and in the connection with which the word is here

used, no one could fail to understand the meaning as being "particular." There was no claim or controversy over the location of the road as being unusual, or odd, or queer; nor was there indeed any dispute over the precise location of the road, but a map showing the precise location was used and referred to constantly by both plaintiff and defendants. If there is anything in the nature of *nice accuracy* in the choice of words which would make the word "particular" preferable to "peculiar" we would not be authorized, to reverse the case because of this slight slip in the niceties of elegant and superfine diction. [Haniford v. Kansas City, 103 Mo. 172, 183.]

As to the charge that the instruction singles out, emphasizes and calls attention to, certain items of evidence, the instruction does not do that. It is the duty of the court to instruct the jury as to the proper basis or elements on which damages are to be estimated. [Robertson v. Wabash R. Co., 152 Mo. 382, 393; Rosenkranz v. Lindell R. Co., 108 Mo. 9, 15.] The court did not tell the jury the farm was divided. However, the fact that the road *ran through* the farm *necessarily* shows it was *divided* and there was no controversy as to that. The instruction does not tell the jury the farm was disfigured but says "disfigurement, if any," and leaves the jury to say whether there was any disfigurement: The instruction is in the approved form. [20 C. J. 734, secs. 189, and 783, sec. 235; Ragan v. Kansas City & S. E. R. Co., 144 Mo. 623, 636.] The case cited by plaintiff (St. Louis R. & N. W. R. Co. v. St. Louis U. Stockyards Co., 170 Mo. 541, 557-559) in support of its charge that Instruction No. 3 is erroneous, is not in point here, because the instruction there was faulty, *first*, because it *assumed* there were special benefits, which, of course, the instruction in the case at bar does not do; *second*, it was erroneous because it singled out certain *evidentiary facts*, such as the cost of removing and rebuilding a house, the rearrangement of a cattle chute, and the building of an embankment, claimed as items of *expense* in connection with the increase or diminution of the damages; *third*, it omitted to include *all* elements of damage recoverable. The instruction in the case at bar offends in none of these particulars. The other cases cited by plaintiff in its attack on Instruction No. 3 are likewise not in point. The instruction does *not* tell the jury that the things mentioned were *in fact* matters of damage but that they, with others of like character as shown by the evidence, *might be considered* as affecting the market value of the land. An instruction of a similar character, though going into much greater detail and somewhat criticized on other grounds, was not condemned as containing reversible error. [Chicago S. F. & C. Ry. Co. v. McGrew, 104 Mo. 282, 302.]

It would seem, from a review of the evidence as to the way in which the farm was cut by the road leaving two portions, one of twenty-nine and three-tenths, acres in one and nine and three-tenths acres in the other, both irregular shape, and capable of being farmed only at great disadvantage, that a large amount of fencing will be required and that fifteen and ninety-five hundredths acres were actually taken for roadway and for borrow pits, the jury must have considered and allowed ample special benefits or they would have allowed more than $1500.

We have no right to *compare* the amount allowed by the commissioners with that allowed by the jury in order to determine whether the latter rendered an unconscionable verdict. If the case was lawfully tried, the jury are the judges of the damages, within such limits, at least, as are here shown. The amount allowed by the commissioners has no place in the trial on exceptions to the report, for such trial is one *de novo*. The report was not, nor could it be, properly introduced in evidence, and of course cannot be considered on appeal, in disposing of the case.

The judgment is affirmed. All concur.