**UNION ELECTRIC COMPANY OF MISSOURI, a Corporation, (Plaintiff) Appellant,**

**v.**

**Oscar SIMPSON and Margaret Simpson, His Wife, and Lucille Simpson, a Single Person, (Defendants) Respondents.**

**No. 31308.**

St. Louis Court of Appeals. Missouri.

Oct. 15, 1963.

---

J. B. Schnapp, Schnapp & Cooper, Fredericktown, for appellant.

Roberts & Roberts, Raymond R. Roberts, Farmington, for respondents.

RUDDY, Presiding Judge.

This is a condemnation action by plaintiff, Union Electric Company of Missouri, a corporation, to acquire a perpetual easement, 100 feet in width, for a right-of-way upon and across the land owned by defendants herein for the purpose of erecting, constructing, keeping and maintaining a high voltage electric transmission line thereon. The trial court appointed three Commissioners who assessed defendants' damages at $1875. Both plaintiff and defendants filed Exceptions to the Award of the Commissioners and upon a jury trial of the Exceptions, defendants were awarded the sum of $2000. Plaintiff's motion for a new trial was overruled and it appeals.

Plaintiff was building and constructing a 138 KV transmission line for the distribution of electric current, extending from its power plant in St. Louis County in a southward direction to its substation in River Mines, St. Francois County, Missouri. Plaintiff's easement runs parallel with the eastern boundary line of defendants' property, consisting of 87½ acres. The easement is 100 feet wide for a total distance of 2037 feet and contains 4.67 acres. Defendants retained the use of said land taken under the easement, except for the areas required for the construction and maintenance of the poles, towers, wires, guys and anchors, and may use said area; however, not to endanger or interfere with the construction, maintenance or operation of plaintiff's transmission and distribution line or lines. Plaintiff also had the right to "add to the number of, and relocate at will poles, towers, guys, anchors * * *." With the easement for the right-of-way plaintiff acquired "the right of ingress to and egress from the said easement or right-of-way at the ends thereof, and the right of traveling over said easement or right-of-way to gain ingress to and egress from the right-of-way or easement owned by plaintiff over lands adjacent to either end of the easement herein sought to be condemned, and the right to trim, cut or remove from said easement or right-of-way such trees or overhanging branches * * * as will interfere with or endanger the said transmission or distribution line or lines."

The proposed construction consisted of three structures comprising a total of seven poles. The first structure consisting of two poles was to be located eight feet north of the south property line of the defendants. The next structure consisting of two poles was to be close to the center of the easement area and the third structure, which would be at the north end of the easement, would be an angle structure, used to turn a corner, consisting of three wood poles with anchors. This structure was located at a point 152 feet from the point where the transmission line leaves the defendants' property. The total number of poles was seven and would carry a total of five wires, three energized and two static wires. However, the number of wires to be placed on the poles may change at any time plaintiff desires to make a change. The transmission lines would be a minimum of 26 feet above the ground at all points and the plaintiff from time to time would go through the easement property for the purpose of inspecting and maintaining the transmission lines and structures. Plaintiff has a general schedule of flying over the lines once a month. However, in case of trouble on the lines, it would expect to fly over the lines to locate the trouble when-

ever it occurred, which might be oftener than once a month. Plaintiff's employees would go through the defendants' land any time they wanted to for maintenance purposes and would go through a growing crop if necessary.

Claude Lovitt, an aerial patrol pilot, flies and does inspection work under contract for the plaintiff. In the course of his inspection duties he flies 60 to 75 feet above the transmission lines and to one side or the other of the lines. He has seen cattle run, while flying over the transmission lines, just a few times, adding, about one time in fifty flights over the lines. He said that usually they do not run and if they do run it is for a very short distance.

Plaintiff charges that the trial court erred in admitting improper evidence; in permitting the defendants' attorney to ask improper questions; in permitting defendants' attorney to argue improper matters to the jury and in giving defendants' instruction No. 1. Plaintiff also charges that the verdict for $2000 was grossly excessive and that it was not supported by any substantial evidence. It is not necessary to state all of the facts. We will relate the facts material to each of the alleged errors in our discussion of the point raised by plaintiff.

In its first point plaintiff claims that the trial court erred in permitting Russell Thurman, a witness for defendants, to express his opinion as to the reasonable market value of the subject property for the reason that the witness was not properly qualified to express an opinion.

This witness testified that he lived at Farmington, Missouri, and was in the farming and cattle business, stating that he raises, buys and sells cattle and pastures them on his own and on rented land. He was familiar with the Simpson tract of land and with the sales of farms over the past few years in the vicinity of Flat River and in the area of the Simpson farm. He knew the price that was paid for these farms. At the time his testimony was given he was renting the land, owned by the Simpsons, for pasture purposes and for hay. He paid them $400 per year. He has had experience with airplanes flying over the pipeline running through his land and said, "There is times that the cattle will run," when the planes fly over and that it (the plane) also bothers the horses. When asked the effect that airplanes would have in flying over the land used for pasturing cattle, he answered: "Well, it would have a lot due to the fact that the fence will be right against the line where the cattle will have no place to go but into the fence or the other way." He said that he would not rent the pasture from the Simpsons next year because of the presence of the transmission lines. He was asked to give his opinion as to the reasonable market value of the farm prior to the taking of the land for easement purposes. Thereafter, plaintiff's counsel objected to the witness answering the question, giving as his reason, that the witness was not properly qualified to express an opinion. This objection was overruled by the trial court and the witness stated that the reasonable market value before the taking was $20,000 and after the taking "around $15,000." In his cross-examination he stated that he was acquainted with the Bartch tract of land north of the Simpson property. He did not think the Bartch tract was primarily pasture land. He thought it could be used for other purposes. The Bartch tract consisted of 240 acres and he heard that it had sold for around $25,000, which he calculated to be approximately $100 per acre. When asked the value per acre of the Simpson tract "exclusive of the buildings" he answered, "I would say in the neighborhood of $150, $200 an acre." He knew that the defendants retained the right to use the land in the easement area.

Plaintiff complains that the witness was never asked if he was acquainted with the reasonable market value of land of the type and character of the defendants' land, in and about that area and plaintiff contends that for this reason witness was not prop-

erly qualified to express his opinion as to the reasonable market value of the Simpson property.

The witness testified that he was familiar with the Simpson tract of land and that he was familiar with the sales of farms in the area of the Simpson farm and in the vicinity of Flat River and knew the price that was paid for these farms. The sales that he referred to were made over the few years prior to his testimony. He indicated he had intimate knowledge of the type and character of the defendants' land, having rented it for pasture purposes the last two years.

 We held in the case of State ex rel. State Highway Commission v. Bailey, 234 Mo.App. 168, 115 S.W.2d 17, 1. c. 26, that the matter of determining whether or not a witness was qualified to express an expert opinion as to the value of property rested in the sound discretion of the trial court. In that case we cited the cases of State ex rel. State Highway Commission of Missouri v. Craighead, Mo.App., 65 S.W. 2d 145, and State ex rel. Highway Commission of Missouri v. Williams, 227 Mo.App. 196, 51 S.W.2d 538. We find nothing in this case to show that the trial court abused its discretion in permitting the witness to express his opinion as to the reasonable market value of the property. The weight to be given to his testimony was, of course, a matter for the jury. State ex rel. State Highway Commission v. Bailey, supra.

In its next point plaintiff contends that the trial court erred in permitting witness, Elmer T. Hovis, to express his opinion that the subject real estate was good subdivision property and suitable for subdivision purposes. In support of its contention it asserts that there is no showing that there was a present demand for the land for such purposes or a reasonable expectation of such demand in the near future.

This witness testified that he lives in Flat River, Missouri, and is engaged in the retail lumber business and has been since 1932. He said he is acquainted with the Simpson tract of land, having been over it previously and again viewed the property prior to testifying. He stated that in 1950 he started subdividing land and bought three tracts of land for subdivision purposes and had bought quite a bit of other land. He further testified that there was not too much land between Flat River, Missouri and the Simpson tract of land that would be suitable for subdivision purposes. He stated that the population of Flat River, Missouri, could only move one way and that was toward the Simpson tract of land. However, he admitted that "it's not moving anywhere now too much but if it ever does move, it has to move to the east * * *." He said that since 1950 there has been an increase in the value of real estate in and around Flat River, Missouri. This witness was asked whether or not the Simpson tract of land was valuable and suitable for subdivision purposes. An objection to this question was interposed by plaintiff, giving as its ground for the objection that the suitability of land for residential, commercial or industrial purposes cannot be considered in determining its market value where its use in the future for such purposes is wholly uncertain. The objection was overruled by the trial court and the witness answered, that about one-half of the tract of land was suitable for subdivision purposes.

In support of its contention plaintiff directs our attention to some of the testimony of Oscar Simpson, one of the owners of the tract of land involved herein, wherein he admitted that the Flat River area has been classified as an economically depressed area and that it was true that the area was not growing in size and population and "generally is sliding the other way." Oscar Simpson further testified that he bought the tract of land in 1950 and that in his opinion it is worth more today than it was when he bought it. He further testified that prior to December 4, 1961, the date of the taking of the property for easement purposes, he had considered subdividing some of his property. The testimony of Oscar Simpson fur-

ther shows that Highway 67 touches a part of defendants' property and that Highway O bounds a part of the defendants' property.

In the case of State ex rel. State Highway Commission v. Graham, Mo.App., 74 S.W.2d 493, 1. c. 495, we quote from the case of State ex rel. State Highway Commission v. Southern Securities Co., Mo. App., 60 S.W.2d 632, 636, as follows:

> "It is well settled that, in determining benefits or damages arising from the taking of land in condemnation proceedings, the value of the property is to be considered for any use to which it is reasonably adapted."

In holding that the trial court committed error in excluding evidence relating to the availability and value of portions of the farm for acreage building sites, we said in State ex rel. State Highway Commission v. Graham, supra:

> "We do not think it may be said as a matter of law, in view of the fact that the farm is located on both state highway 67 and U.S. highway 61, just out of Fredericktown, the county seat of Madison County, that the availability of portions of the farm for acreage building sites is speculative, or not in reasonable anticipation." (74 S.W.2d 1. c. 495.)

■ Plaintiff contends that there must be a showing of a present demand for the land for subdivision purposes or a reasonable expectation of such a demand in the near future, citing Union Electric Co. of Missouri v. McNulty, Mo., 344 S.W.2d 37, and In re Armory Site in Kansas City, Mo., Mo., 282 S.W.2d 464. In the case of In re Armory Site in Kansas City, supra, the court did say:

> "In determining the just compensation to which the owner is entitled, the jury may consider uses of the land for which it is reasonably suitable, having regard to the existing business wants of the community, or such as may be reasonably expected in the future." (282 S.W.2d 1. c. 470.)

In that case the Supreme Court cites our case of State ex rel. State Highway Commission v. Graham, supra, and states that "[t]he landowner may and did show that the land was adaptable for use as building sites." (282 S.W.2d 1. c. 472.) In the instant case the testimony shows that the defendants' property either borders or touches two principal highways, namely, United States Highway 67 and Highway O. That it is approximately one mile from Flat River, Missouri, and that whatever growth occurs in the population of Flat River, Missouri, it must proceed in the direction of defendants' property. As in the Graham case, supra, we cannot say, as a matter of law, in view of the aforesaid testimony, that the potential use of a part of the defendants' farm for subdivision purposes is speculative, or not in reasonable anticipation. We think the weight and value of this testimony was for the jury and that the trial court did not err in permitting the witness, Elmer T. Hovis, to express his opinion that the subject real estate was good subdivision property and suitable for subdivision purposes. We believe that the jury, in arriving at the market value of the land taken for easement purposes, should be permitted to consider the land as a subdivision potentiality.

■ In the redirect examination of Oscar Simpson, after he testified that there were no provisions made for gates into and out of the easement area, he was then asked, "In other words, they can go through there and tear down your fence if they want to get in and out?" Plaintiff objected to this question, giving as his ground that there is a presumption against negligence or wrong-doing on the condemnor's part. The trial court overruled plaintiff's objection. However, defendants' counsel did not pursue this question and no answer was given by the witness. After the court overruled the plaintiff's objection defendants' counsel questioned the witness about another mat-

ter. There is no doubt about the question being improper for it contemplated future tortious acts of plaintiff's agents and employees (Missouri Power & Light Co. v. Creed, Mo.App., 32 S.W.2d 783) and the trial court erred in overruling the objection to this question. Error in overruling an objection to a question will not constitute a ground for reversal where no prejudice results to the party complaining and this rule has been applied where the question was not answered. 5A C.J.S. Appeal and Error § 1716, pp. 890–891.

In the case of Jordan v. Daniels, 224 Mo.App. 749, 27 S.W.2d 1052, an objection was made to a question and the objection was overruled. The court pointed out that the question was never answered and that the inquiry proceeded along other lines. The court then said: "We fail to see any error or any hurt to the defendant on account of this procedure." (27 S.W.2d l. c. 1058.)

In support of its position plaintiff cites the cases of Missouri Power & Light Company v. Creed, supra, and Kamo Electric Co-Operative v. Baker, 365 Mo. 814, 287 S.W.2d 858. There is no need to detail the facts of these two cases. It is sufficient to state that they are easily distinguished from the instant case. As pointed out by defendants, both cases were reversed because instructions were given allowing the jury to consider possible subsequent damages due to tortious acts and in both cases considerable evidence was admitted relative to such tortious acts. No such instructions are involved in the instant case. As said in the case of Ryan v. Campbell "66" Express, Mo., 304 S.W.2d 825, l. c. 829: "If every case in which improper questions were asked was reversed, few verdicts would stand."

What we have said in overruling the last point relied on by plaintiff is applicable to the next contention made by plaintiff.

■ Henry Colteryahn, an employee of the plaintiff, was called as a witness by the defendants. He was asked by counsel for the defendants whether or not plaintiff had a working agreement with the Bell Telephone Company, whereby it would run its telephone lines over the property covered by the easement. Plaintiff's attorney objected to the question, giving as his ground, that the property was taken solely for the purpose of electric transmission lines and not the telephone lines and that plaintiff had no authority to place telephone lines on its poles. The trial court overruled the objection and the witness answered that he was not qualified to answer the question and indicated that he did not know the answer to the question. No further inquiry concerning this matter was made by defendants' counsel. It is true that there is nothing in the condemnation order permitting the plaintiff to place wires of the Bell Telephone Company on its poles, and the trial court should have sustained the objection to the question. However, we do not think the mere asking of the question constituted prejudicial error.

Plaintiff contends that the persistent asking of the two questions, one involving the possible tearing down of fences and the other involving the possible use of the lines by the Bell Telephone Company, constituted a wilfull attempt to present improper matters to the jury and to create significant and improper inferences. As said in the case of Ryan v. Campbell "66" Express, supra: "In each such case the final question is whether the conduct substantially influenced the verdict, despite the action taken at the time by the court, in sustaining objections or otherwise. If every case in which improper questions were asked was reversed, few verdicts would stand." (304 S.W.2d l. c. 828.) We do not think this record indicates the persistent asking of improper questions. The two questions attacked and charged as error by plaintiff were asked of different witnesses and were widely separated in the course of the trial. We do not believe that the asking of these questions raised any improper inferences in the minds of the jurors, nor do we think

they influenced the verdict. For the reasons given this contention of plaintiff is overruled.

■ We shall next consider plaintiff's contention that the trial court erred in permitting defendants' attorney to argue improper matters to the jury. The first matter complained of by plaintiff is the statement made by defendants' attorney, in his opening argument to the jury. He told the jury: " * * * Naturally, my clients do not want that high line on their land. * * *" The objection of plaintiff's counsel to this statement was overruled by the trial court. The next statement made by defendants' counsel to the jury, charged to be improper by plaintiff, occurred in the opening statement and is as follows:

"Now, ladies and gentlemen, to begin with, and you may just as well face it, power lines of that kind are a necessity in this Country, we admit that, but they're an unsightly thing in the first place to look at. * * *"

Plaintiff's counsel objected to this statement, giving as his ground, that there was no evidence in the case to support a showing that the lines were unsightly. This objection was overruled by the trial court. In support of its contention that it was error for defendants' counsel to argue to the jury that defendants did not want the high line on their land, plaintiff cites the case of State ex rel. Northwest Electric Power Co-Operative, Inc., v. Waggoner, Mo.App., 319 S.W.2d 930. In that case the defendants had purchased a 64 acre unimproved tract of land and had selected the highest area on the tract as a building site for their potential home. The easement sought by plaintiff in a condemnation proceeding ran directly across the defendants' selected building site, which would bring the transmission lines over the place selected by the defendants as their home site. The testimony on behalf of the defendants was that this building site was the best and only satisfactory building site on the entire 64 acre tract. Plaintiff in its appeal contended

that the trial court allowed improper and prejudicial jury arguments by permitting the defendants' attorney to argue that plaintiff could have turned the line, thus taking a different route and avoiding placing its power line over the selected home site; that plaintiff would have been required to pay more money to maintain the line if they had moved the line as defendants requested so as to avoid going over the selected home site; and that the line "could fry you like an egg." The Kansas City Court of Appeals held that the plaintiff had the legal right to locate its easement over and across that portion of defendants' tract where the selected home site was located and that plaintiff's only resultant duty was to pay just compensation for that taking. The court held that it was clearly improper and resulted in prejudicial error which had materially affected the merits of the cause when defendants' counsel complained to the jury that plaintiff could have selected another location for its easement, which would not have gone over its selected home site, but that plaintiff with knowledge of defendants' selection refused to change its location of the easement.

It is readily observable that the argument in the Waggoner case is not analogous to the argument confronting us. We do not think that defendants' counsel in the instant case sought to emphasize the forced nature of the taking and this is made clear from his admission during his argument that power lines of that kind are a necessity in this country. There was no effort on the part of defendants' attorney to suggest that the transmission lines could have been placed elsewhere. We agree with defendants' comment in their brief that it would be a difficult construction to hold that defendants' counsel in his argument to the jury sought to have the jury punish plaintiff for the taking, when he readily admitted that these power lines "are a necessity in this country." We do not mean to approve such remarks before a jury in a condemnation proceeding. We merely hold that under the circumstances of this case, when consid-

ered with the other statements made to the jury, it shows no prejudicial error and we do not think the argument had any effect on the jury's verdict.

In connection with the other portion of the jury argument of defendants' counsel, plaintiff contends that there was no evidence offered that the fair, reasonable market value of the defendants' real estate would be affected by any unsightliness of the power lines across the farm land. We find plaintiff to be mistaken in this contention.

Paul Clay, a witness for the defendants, testified that he was a real estate broker. When asked what his experience had been with prospective purchasers of land where a power line ran across it, answered: "Any farm where there is a utility line or a pipe line on it, it has a tendency to depress the price and people very definitely will make exceptions to it. Invariably over the years I'd say a pole line or a pipe line or any utility depreciates the value. * * * Not alone depresses the value of the land but depresses the value of the whole property because you're well,—hurting it strictly for a resale and for future development of any sort. * * *" While this witness did not refer to the unsightliness of the power lines, he did say that the power lines as such, which consisted of the poles, the guy wires, the anchors, and the transmission lines, depressed the reasonable market value of the real estate and that "people very definitely will make exceptions to it, (the power lines.) In further support of its contention that this argument was error, plaintiff states that the aesthetic considerations could not conceivably have affected the fair, reasonable market value of the defendants' real estate.

In support of this last position plaintiff cites 124 A.L.R., p. 413, as follows:

"The unsightliness of power transmission lines, poles, and towers has been held not to be an element of damage to be awarded for the condemnation of the necessary land and right of way for such lines, in the following cases involving farm lands." (Citing cases.)

However, on this same page, the same authority states:

"However, in Ohio Pub. Serv. Co. v. Dehring (1929) 34 Ohio App. 532, 172 N.E. 448, the court said that the unsightliness of towers and transmission lines could be considered by the jury in awarding damages for a taking of farm land for a right of way for power lines, for the reason that unsightliness might affect the value of the land.

"And again, in Texas Power and L. Co. v. Jones, (1927; Tex.Civ.App.) 293 S.W. 885, it was said that if it were true, as alleged, that a power line with its poles, cross arms, wires, etc., is an unsightly object, disagreeable or repellent to sight, its presence would naturally have a tendency to affect adversely the market value of the land and that such fact could therefore be considered in determining the damages to be awarded in the condemnation proceedings."

■■ We think the jury had the right to consider any effect the power lines may have had on the market value of the property, for we believe they are entitled to take into account every element and every effect resulting from the taking and from the structures installed, which would influence an intended purchaser's estimate of the market value of the subject property. There is another reason for overruling plaintiff's contention in connection with the jury argument made by defendants' counsel, and, that is, that an appellate court will not in the absence of an abuse of discretion disturb the exercise by the trial court of its discretion with respect to the alleged improper argument of counsel and its rulings thereon will not be disturbed unless there has been an abuse of discretion. Polizzi v. Nedrow, Mo., 247 S.W.2d 809, 1. c. 813, 5A C.J.S. Appeal and Error § 1611, pp. 113, 116.

■ Plaintiff complains that the trial court erred in giving Instruction No. 1 for the reason that said instruction submitted an improper measure of damages and for the further reason that there was no evidence to support the measure of damages as submitted in said instruction. Plaintiff admits that the instruction it attacks is the same as the one approved in the case of Union Electric Company of Missouri v. Miller, Mo. App., 354 S.W.2d 341. Therefore, there is no need of setting out the instruction under attack in this case. The measure of damages in a condemnation proceeding is the difference in the reasonable market value of the entire tract before and after the appropriation of the part taken. Union Electric Company of Missouri v. Miller, supra, and numerous cases cited in this authority.

We said in the Miller case that: "The courts of this state have long recognized and followed the rule that where only a part of the property is condemned the owner is entitled to recover the reasonable market value of the property actually taken plus any damages resulting to the remainder of the property because of the taking of the part." (Citing cases.) (354 S.W.2d 1. c. 343.)

The part of Instruction No. 1 under attack by plaintiff follows this method of assessing damages as stated above and as we said in the Miller case: "the aforementioned rule and similar instructions have been approved * * *." (354 S.W.2d 1. c. 343.) We also said in the Miller case: "In cases where a part of a tract of land is condemned the courts have expressed the rule of the measure of damages in two different ways and 'each expression inclusively defines as well as complements the other.'" (354 S.W.2d 1. c. 343.) Therefore, it makes no difference if the jury is told that the measure of damages is the difference in the reasonable market value of the entire tract before and after the taking or that the owner is entitled to recover the reasonable market value of the prop-

erty actually taken plus any damages resulting to the remainder of the property because of the taking of the part. Both methods should lead to the same result.

As we said in the Miller case, when citing State ex rel. State Highway Commission v. Williams, Mo.App., 263 S.W.2d 444: "[T]he court held that it was wholly unable to find that a jury could have been confused or led into assessing double damages by giving instructions on each (both) methods of determining damages." (354 S.W.2d 1. c. 343.)

■ Plaintiff contends that the Miller case is to be distinguished on the facts from the instant case. It says that in the Miller case the easement ran across the middle of a 40 acre field which constituted a severance of the defendant landowners' property. It claims that this is not true in the instant case and that for this reason there could not be any damage to the remainder of the defendants' real estate. It is true that the easement in the instant case ran along the eastern border of defendants' property but we cannot say as a matter of fact or of law that because there was no actual separation or severance of the defendants' property there was no damage to the part of defendants' property not involved in the easement right-of-way. We think this is a matter for the jury's consideration based on the evidence it heard. In this connection it will be recalled that Paul Clay, a witness for the defendants, testified that the presence of the transmission lines depresses the value of the whole property, and as he said, "hurting it strictly for a resale and for future development of any sort * * *." Plaintiff's contentions that Instruction No. 1 submitted an improper measure of damages and that there was no evidence to support the measure of damages as submitted are overruled.

Plaintiff contends that the instruction is erroneous for other reasons. It says that the instruction indicates that the landowners should be paid for the total value of

the entire 4.67 acres of land contained in the easement and does not give the jury the right to take into consideration the retained right of usage by the defendant landowners. The instruction is not subject to such a construction. The instruction definitely limits the damages resulting from the taking and appropriating of a perpetual easement over and across defendants' land, mentioned in the evidence. We think the jury was properly instructed and knew that only an easement or right-of-way across defendants' land was involved and from the evidence knew that defendants retained the right to use the land in any manner that would not interfere with the maintenance and operation of the transmission lines.

■ The last point for consideration urged by plaintiff is that the verdict for $2000 was grossly excessive and, plaintiff adds, "because it was not supported by any substantial evidence." Plaintiff's principal contention in this respect, as stated in its brief, is "there could not be any severance damage because the defendant landowners' property is not severed by the acquisition of this right-of-way easement." This contention made by plaintiff in the point previously discussed was held to be without merit. It is without merit in connection with a consideration of the point now under discussion.

Plaintiff errs when it assumes that the only damages are the acreage values of the part actually taken. In its brief plaintiff multiplies what it finds to be the damage per acre by the number of acres involved in the easement right-of-way. As we have pointed out heretofore, this is not the way to determine damages in a condemnation proceeding. An examination of the record indicates that there is substantial evidence to support the verdict.

Oscar Simpson, one of the owners, testified that in his opinion the reasonable mar-

ket value before the taking was $25,000 and after the taking $17,500 or damages of $7500. Russell Thurman testified that the reasonable market value before the taking was $20,000 and after the taking $15,000, or damages of $5000. Paul J. Clay testified that the reasonable market value before the taking was $17,500 and after the taking $12,500 or damages of $5000. Plaintiff admits that Paul J. Clay was competent to testify as to real estate values and in his brief states that "the testimony of Paul J. Clay was the only competent testimony as to valuations submitted by the defendant landowners." While we do not agree with plaintiff that Paul J. Clay was the only competent witness and gave the only competent testimony, it has been held that the opinion of one qualified witness as to the extent of damage would constitute substantial evidence. Empire Dist. Electric Co. v. Johnston, 241 Mo.App. 759, 268 S.W.2d 78; City of St. Louis v. Buselaki, 336 Mo. 693, 80 S.W.2d 853.

■ We find the verdict supported by substantial evidence. While we may in a proper case interfere where the damages in condemnation are grossly excessive, however, where the award of damages is supported by substantial evidence, it will not be disturbed. Empire Dist. Electric Co. v. Johnston, supra; City of St. Louis v. Buselaki, supra. It should be pointed out that there is very little difference between the awards made by the Commissioners and the amount of damages found by the jury in this case.

Defendants filed a motion to dismiss this appeal for failure of plaintiff to comply with Supreme Court Rule 83.05(c), V.A.M.R. The motion to dismiss is overruled.

The judgment is affirmed.

WOLFE and ANDERSON, JJ., concur.