SOUTHWESTERN BELL TELEPHONE COMPANY, a Corporation, (Plaintiff) Appellant,

v.

Annie P. JENNEMANN, (Defendant) Respondent.

No. 32129.

St. Louis Court of Appeals.

Missouri.

Sept. 20, 1966.

Samuel Richeson, Dearing, Richeson, Weier & Roberts, Hillsboro, John Mohler, Leo E. Eickhoff, Jr., St. Louis, and Michael Grove, St. Louis, for plaintiff-appellant.

Earl R. Blackwell, Hillsboro, for defendant-respondent.

RUDDY, Judge.

This is a condemnation action by plaintiff, Southwestern Bell Telephone Company, a corporation, to acquire and appropriate a right-of-way and easement across the land owned by defendant. Plaintiff and defendant filed exceptions to the award of the Commissioners and upon a jury trial defendant was awarded the sum of $4,000.00. Plaintiff appealed from the ensuing judgment.

The easement acquired in this condemnation action was a right-of-way to construct, operate, maintain, inspect, replace and remove an underground communications system consisting of underground cables, wires, conduits, surface testing terminals, markers and other necessary appurtenances upon, over and under a strip of land one rod (16½ feet) in width across the land of the defendant. In connection therewith plaintiff acquired (a) the right of ingress and egress across the land of defendant by reasonable routes to and from said right-of-way; (b) the right to place such surface markers and surface testing terminals as may be necessary on said strip; (c) the right to clear and keep cleared all trees, roots, brush and other obstructions from the surface and sub-surface of said strip as may be necessary for the construction, operation and maintenance of said communications system; and (d) the right to install temporary gates in fences crossing said strip, which fences shall be repaired and restored to their former condition following construction. Plaintiff agreed to pay defendant for all damage caused to defendant's property during the construction, operation and maintenance of said communications system.

The following rights were reserved to the defendant: the right to freely use and enjoy the right-of-way insofar as the exercise thereof does not endanger or interfere with the construction, operation and maintenance of said communications system or create a hazard thereto; the right to cultivate and grow crops, and; the right to establish roadways and utility lines across said easement, except that no building or structure shall be erected within the easement and right-of-way without the written consent of the plaintiff.

During the trial a controversy arose between counsel as to whether or not the rights reserved to defendant, alleged in plaintiff's petition, permitted filling of dirt over the easement area. In order to settle this controversy plaintiff obtained permission from the court to amend its petition and did amend the petition by giving the defendant the right, " * * * 'to raise the grade of the easement area by filling,' * * *."

The tract of land involved is rectangular in shape and contains about twenty acres. As noted, the easement acquired is 16½ feet in width and extends along the western boundary of defendant's tract a distance of 794.1 feet. State Highway 1–55 adjoins the western boundary. The easement area involved contains 3⁄10 of an acre. The tract contained an old farm home and some corn cribs. These structures were of little value. Water and electricity is available to the tract. The land was described as rolling and generally sloping. Defendant's witnesses said the land was best suited for a residential subdivision and said there were many such subdivisions in the area. If the land is developed into commercial or residential use in the future, plaintiff's crews and equipment will have to traverse some of the developed property to reach the easement, if repairs to the cable are necessary, because access to the easement from Highway 1–55 will be barred by a high fence to be erected by the State Highway Department on the boundary between defendant's property and Highway 1–55.

Irvin Brouk testified on behalf of defendant as to damages sustained by reason of the creation of the easement on the tract involved. He gave it as his opinion that the 20 acres were worth $100,000.00 before the acquisition of the easement. He then

gave the following testimony in his direct examination:

"Q. Tell us what, in your opinion, the value of that property was after Southwestern Bell buried their cable in there?

"A. Well, they, to my estimation, damaged two acres of ground.

"Mr. Richeson: (Attorney for plaintiff) I object to his estimation, Your Honor, there's no proof of any damage to two acres.

"A. I'd say it was worth only $90,000.00.

"Mr. Blackwell: Now wait.

"The Court: Now I think I'd leave off about what he damaged, just give the value of it, as you figure it, after the taking.

"A. About $9,000.00, after they went through the twenty acres."

In his cross examination he was asked:

"If you build a high fence along the east side of the easement all you'd do is take three-tenths of an acre away from the Jennemann property, wouldn't it?

"A. I don't think so.

"Q. You don't think so?

"A. No."

During this witness's cross examination he was also asked:

"Q. How much an acre do you say it is after the easement?

"A. Well, I didn't figure it out in acreage but I figured the whole tract with the hole in it with that ditch, that it had disvalued two acres and knocked the total value down to $90,000.00."

At the conclusion of plaintiff's testimony, Mr. Richeson, Attorney for plaintiff, requested the court to, " * * * strike all evidence offered on the part of defendant, with respect to what might be termed severance damages, or damages to the remainder of defendant's tract other than the easement area, for the reason that there is no support in the pleadings or any evidence of damage to the remainder of plaintiff's area, by reason of the taking of the easement, and there is not evidence to support any assumption of damage by any witness to the remainder of defendant's tract by reason, * * *." "The Court: I don't recall any evidence." "Mr. Richeson: Some of them attempted to say that they were basing it on the assumption of damage to two acres." "The Court: I think though that was straightened out before they got off the stand." Later in the same colloquy, the Court told counsel for plaintiff that he thought the matter was straightened out and added, " * * * I'm afraid to do any instructing on that." Mr. Richeson then said, "All right."

■ Plaintiff now contends that the trial Court erred in permitting this witness to testify as to damages to two acres of defendant's land, and in refusing to strike such testimony on plaintiff's motion. While it was undisputed that the easement area contained only three-tenths of an acre, witness Brouk seemed to think it contained two acres. However, it will be remembered that the witness was asked to give his opinion as to the value of the twenty acres before and after the easement was acquired, and after the Court suggested that he leave off the estimation of damage to the two acres of ground, he gave the value of the twenty acres after the taking at $90,000.00. On cross examination the witness attempted to clarify this by stating that the laying of the cable had, " * * * disvalued two acres and knocked the total value down to $90,000.00." Obviously, by "total value," he meant the value of the twenty acre tract.

It seems clear to us that the witness thought the easement area consisted of two acres and his testimony can be reasonably construed to mean that the acquisition of the easement area, whether it consisted of three-tenths of an acre or two acres, "disvalued," as he described it, the whole tract

$10,000.00. He made this clear in his cross-examination when he said, "I didn't figure it out in acreage but I figured the whole tract * * * that ditch, * * * knocked the total value down to $90,000.00." He gave this value after the Court told the witness to, "leave off about" the damages to two acres and to give the value of the twenty acre tract "after taking." We do not think it correct to charge that the witness was permitted to testify as to damages to two acres. We think, as the Court pointed out, if there was any confusion about damages, which confusion we fail to find, it was "straightened out" by the Court before the witness got off the stand. We find no merit in plaintiff's contention.

In the next point relied on by plaintiff it charges the trial court, " * * * erred in permitting defendant's counsel to argue to the jury damages occurring subsequent to the taking, and that plaintiff was not required to pay subsequent damages incurred in making repairs, to defendant's successors in title; and in failing to take effective action to cure the prejudice."

Before discussing this point we refer to a paragraph contained in Plaintiff's Instruction No. 2, wherein the jury was told, "Plaintiff must pay the *defendant* for all damage caused to her property by plaintiff, its agents, contractors, and employees, during the construction, operation and maintenance of said communication system, so that this damage, if any, shall not be considered by you in arriving at your verdict." (Emphasis ours.)

In the course of the argument of defendant's counsel to the jury he stressed the right of plaintiff to cross over defendant's property to make repairs with whatever equipment was necessary, no matter how heavy, and the consequent effect this right would have on the value of the tract. He then said if plaintiff chose to, " * * * they could come right square across their front yard or their back yard, through the fences, I don't mean they'd come in there and tear down the fences, I don't mean

that." Thereafter, plaintiff's counsel interposed the following objection: "Now, wait just a minute, Senator, I know you didn't mean it, but I want to object to it. The petition, pleadings and instructions in this case provide that in the event that Southwestern Bell does any of the things Senator Blackwell is talking about here now, they'd have to pay for it." Defendant's counsel then responded, "It does not, Your Honor." Plaintiff's counsel then asked the court to instruct the jury to disregard that argument. The following then took place:

"The Court: I think that's correct. I think, in the instructions, it says they have to pay separate damages if they do some damages going in through there.

"Mr. Blackwell: If the court please, it says they are going to pay the defendant only, says nothing about successive lot owners or successive purchasers, this instruction says nothing about that. Says plaintiff must pay the defendant and that's all it says, and the defendant in this case, Your Honor, is only one person, Mrs. Jennemann. All future owners, successors in title, it does not mean, Your Honor, it doesn't say that.

"Mr. Richeson: Any deed from Mrs. Jennemann would carry that right.

"The Court: I believe it will include successive owners, I don't know but that's my impression. Let the record so show, if that's wrong why then it's reversible. Go ahead."

Thereafter, the court admonished defendant's counsel to stay within the evidence and argue the inferences therefrom. The pertinent parts of the colloquy that followed between the court and counsel for defendant and plaintiff were as follows: defendant's counsel raised the question, " * * * Suppose they don't pay for tearing up somebody's lawn." Plaintiff's counsel responded that plaintiff was subject to a law suit and the court said, "Now, I think the instructions say they are liable for damages if they do damages." To which defendant's coun-

sel responded, "Yes sir, they are liable if they'll pay." The Court then said, "Of course, you can't settle that at this time." Objections to other matters were made by plaintiff's counsel during this colloquy which are not pertinent to the point relied on by plaintiff and which we have omitted. At the conclusion of the entire colloquy the Court said, "Let's stay within the evidence and instructions to the jury and argue the case. Let's don't get outside the record." Later in the closing part of his argument defendant's counsel, when referring to plaintiff's Instruction No. 2, asked the jury, "* * * to be sure to read the first line of where it says if they come in there and tear the place up, their going to pay the defendant, you look close there at that word defendant and see if you can see anything about successors in title to the defendant. See if you can find that in there." Plaintiff's counsel again objected and asked that defendant's counsel be reprimanded, to which defendant's counsel responded, "I'm just asking them to read the instructions there." The Court then said, "Now, just go ahead and stay off of that." Thereafter, plaintiff's counsel asked that defendant's counsel be reprimanded and the court then said, "Now, I've already stated that I thought it wasn't to be in the argument. Now, you made your record on it."

Plaintiff nows says that the reprimands were ineffective and were nothing more or less than tacit approval of the argument of defendant's counsel.

■ Defendant's recovery is limited to the damage sustained by reason of the taking of the easement and as said in Missouri Power & Light Co. v. Creed, Mo. App., 32 S.W.2d 783, l. c. 787, "* * * does not in any wise contemplate a recovery in advance for any torts that may be subsequently committed." Also see Union Electric Company of Missouri v. Simpson, Mo.App., 371 S.W.2d 673. Such torts, if they happen, are proper subjects for future damage suits.

■ However, the original argument that preceded the dispute that ensued, did not seek damages for torts occurring subsequently, but stressed the effect the right of plaintiff to cross over defendant's property would have on the then market value of defendant's property. It was the substance of plaintiff's objection to this argument that precipitated the colloquy that followed regarding whether plaintiff would have to pay successors in title to defendant for damages occurring subsequent to the taking. Obviously, defendant's counsel was in error in contending that plaintiff was not liable to defendant's successors in title for damages occurring subsequent to the taking, despite the wording of Plaintiff's Instruction No. 2. We think the Court made it clear to counsel and the jury that such damages were not recoverable in the instant action. The instructions defined the limits of the recoverable damages. Plaintiff's objections to this contention were all sustained by the Court. The reprimands asked were given. While they appear somewhat mild when read in the printed record, we have no way of knowing the force or vigor with which they were administered. We disagree with plaintiff's charge that the Court gave tacit approval to the statements and argument of defendant's counsel. Plaintiff got all of the relief it asked for during the trial. In considering this complaint of plaintiff we are mindful that the trial court has considerable discretion as to what action should be taken when these matters arise and that an appellate court will not, in the absence of an abuse of discretion, disturb the exercise of the trial court of its discretion with respect to the alleged improper arguments of counsel and its rulings thereon will not be disturbed unless there has been an abuse of discretion. Union Electric Company of Missouri v. Simpson, supra., l. c. 681 and authorities therein cited. We find no abuse of discretion on the part of the trial court and do not think that the discussion and argument that took place had any effect on the jury's verdict.

Another complaint is made about the jury argument of defendant's counsel. In an attempt to answer the jury argument of plaintiff's counsel, wherein he attempted to minimize defendant's damages, defendant's counsel told the jury,

"  *   *   * If I had that tract up there or if you had it and you have a right to consider that, a hundred thousand dollar twenty acre tract, subdivision tract, would you want that cable buried there right under the surface of your ground for any amount of money? I wouldn't want the thing in there for anything if it was going to knock twelve thousand dollars off of my sale price. If Southwestern Bell is going to make ten million bucks on having it laid there then I want to be paid what my land is worth.

"Mr. Richeson: Wait just a minute, Mr. Blackwell, I want, at this time on account of Counsel's prejudicial argument to the jury, to move the Court, discharge the jury and declare a mistrial.

"The Court: That'll be denied but let's don't get outside the record.

"Mr. Richeson: I want to move the Court to reprimand Counsel for making that extremely prejudicial argument.

"Mr. Blackwell: All I'm saying is, * * *

"The Court: That argument about what they're going to make out of it is not a correct argument. The jury will disregard it.

"Mr. Richeson: I want the Court to reprimand Counsel for making that argument.

"The Court: That's sufficient reprimand, I think."

▮▮▮▮ Plaintiff says the circumstances above related, " * * * required a firm, final and conclusive rebuke to land owner's

counsel, and a warning to refrain from further such conduct," and contends that the court ruling on the objection and its admonition and reprimand were, " * * * tantamount to overruling the objection and stating that the conduct of defendant's counsel was proper." No such impression could have been gained by the jury. The Court clearly announced to counsel and the jury that the statement complained of, was not a correct argument and instructed the jury to disregard it. The Court also admonished defendant's counsel not to go outside of the record evidence. Defendant's counsel should not have made the statement complained of by plaintiff. It concerned matter not within the issues and of course had no evidentiary support. It was not retaliatory and was improper. However, if it does not appear probable that the jury was prejudicially affected the improper statement is not grounds for reversal. Improper statements in jury argument may be cured by proper instructions to the jury by the court. Plaintiff has cited some cases where the jury argument was held to be prejudicial, but they are of little help, because it is generally recognized that the argument complained of in each case must, of necessity, be decided on its own merits. The trial judge must take into consideration the parties, the issues and the general atmosphere of the case. What should be done to correct the effect of an improper statement is a matter for the sound discretion of the trial court. As we have indicated in a ruling on a previous point, whether or not the matter complained of warrants a reprimand or admonition by the court and the extent and vigor of the admonition are addressed to the sound discretion of the trial court. Where the court does so reprimand or admonish counsel with an admonition to the jury to disregard the improper statement, the impropriety of the statement is ordinarily cured by the admonition or reprimand and the court's instruction to the jury. The Court did tell the jury, as we pointed out, to disregard the improper statement and did admonish defendant's counsel

not to go outside the record and that his argument was not a correct argument. What we said in connection with the prior point is equally applicable here and we find no abuse of discretion on the part of the trial court and the jury verdict does not indicate that the argument that took place had any effect on their deliberation. We point out that it is only in extreme cases that an admonition to the jury to disregard the improper statement will not correct such misconduct on the part of defendant's counsel. We do not think the statement complained of is sufficient to warrant a reversal.

 The final point urged by plaintiff is that the verdict is excessive by at least $3,500.00. Six qualified witnesses testified on behalf of defendant as to the damages sustained by reason of the taking of the easement. It would unnecessarily burden this opinion to relate the testimony of these witnesses as to the reasonable market value of the 20 acre tract before and after the taking of the easement. It is sufficient to point out that their testimony showed damage to the entire tract ranging from $8,300.00 to $12,000.00. While it is true that two of plaintiff's witnesses testified to only $180.00 damages and another of plaintiff's witnesses testified to $300.00 to $500.00 damages, it was for the jury to determine the just compensation to which defendant was entitled. While we may in a proper case interfere where the damages in condemnation are grossly excessive; however, where the award of damages is supported by substantial evidence, it will not be disturbed. City of St. Louis v. Buselaki, 336 Mo. 693, 80 S.W.2d 853; Union Electric Company of Missouri v. Simpson, supra, and Empire Dist. Electric Co. v. Johnston, 241 Mo.App. 759, 268 S.W.2d 78. A judgment in a condemnation proceeding should not be disturbed because of a disparity in the testimony of witnesses or even because of a seeming preponderance of the evidence one way or another. City of St. Louis v. Gerhart Realty Co., 328 Mo. 103, 40 S.W.2d 661, 665. The verdict of the jury was supported by substantial evidence.

The judgment should be affirmed. It is so ordered.

WOLFE, P. J., and ANDERSON, J., concur.