CITY OF ST. LOUIS, Appellant, v. PETE BUSELAKI ET AL., PETE AND ANNIE BUSELAKI, HAMPTON INVESTMENT COMPANY, a Corporation.—80 S. W. (2d) 853.

Court en Banc, March 9, 1935.

*Charles M. Hay, John T. Hicks* and *James B. Steiner* for appellant.

*Gustave A. Stamm, Maurice L. Stewart* and *Hartman & Porter* for respondents.

HAYS, J.—This is a proceeding brought by the city of St. Louis under Ordinance No. 38,649 to condemn property for a public highway to be known as route No. 99 and for the establishment of a traffic circle at the street intersection formed by the convergence, near the northern limits of the city, of Halls Ferry road, Goodfellow Avenue and Kingshighway Northwest. The map below shows the

location of the properties of respondents which are affected by the appropriation.

At the date of the appropriation, August 9, 1930, the effective date of the ordinance, all the converging highways, except No. 99, had been established. Kingshighway runs through the entire city; Goodfellow Avenue runs to Delmar Avenue; Halls Ferry road runs from Baden to the Lewis and Clark Bridge spanning the Missouri River. The unusual convergence of so many important thoroughfares forms a unique street intersection in a locality which, within a few years before the appropriation, had emerged from the market-garden state into subdivisions with strategic corner lots adapted to utilization for commercial purposes, and others, with street frontage, for residential purposes, as the result, primarily, of the city's trend of expansion, and, secondarily of the construction of sewers and of the paving of these thoroughfares, except No. 99 and Kingshighway toward the east, and others.

Upon examination of the map it may be observed that the projecting corners of respondents' lands in suit (Buselaki's parcel marked "No. 1" and respondents Hampton Company and Yore's parcel marked "No. 2") are appropriated by the traffic circle, which has a radius of 185 feet. The sector thus taken off the entire Buselaki parcel contains an area of 8,196 square feet, with one of its radii, 116 feet, on Goodfellow Avenue and the other, 123 feet, on Kingshighway, Northwest; while the sector taken from the Hampton-Yore parcel has an area of 10,685 square feet, with one of its radii, 140 feet, on Goodfellow and the other, 125 feet, on Halls Ferry road.

The commissioners who assessed the damages and benefits to said properties (and other property not involved in this appeal), serving under appointment of the circuit court, made due report on December 9, 1930, in which report they assessed the net damages to the Buselaki parcel at $16,392, and to the Hampton-Yore parcel at $21,368. On the trial had on exceptions filed by the appellant the circuit court approved and confirmed the commissioners' report. From that decision and judgment the city appealed.

To reverse the judgment the appellant presents these points—not here given in the same order; I, that respondents' witnesses, save one, in giving their estimates of damages, failed to appraise the entire parcel as of before the part is taken, next to appraise the remainder left and then fix the damages at the difference between the two values; II, that the court admitted and refused to strike out testimony based on speculative and future values, and testimony calculated to compel the appellant to pay more for the property because it was taking the same by condemnation; III, that the court, in overruling the exceptions to the commissioners' report, disregarded evidence of sales made of similar property in the same neigh-

borhood; IV, that the decision is not supported by substantial evidence; and V, that the damages are flagrantly excessive.

■ In view of the record the appellant seems hardly consistent in urging as error the alleged failure to observe the so-called "before and after" rule mentioned above and afterwards correctly hypothesized in appellant's Instruction No. 2. Each one of appellant's witnesses on damages appraised the entire parcel of each owner, assessed benefits to the remainder, deducted the latter sum from the former, and fixed the damages at the difference between those sums; also they alternatively put a value on each entire parcel and a value on each remainder, and fixed the difference between those values as the damages. Each method produced the same results. No objection was interposed or motion made to strike the testimony of respondents' witnesses. In default of same the appellant cannot be heard to complain of error in the admission of this testimony. [State ex rel. St. Louis Bridge, etc., Co. v. Haid, 325 Mo. 532, 29 S. W. (2d) 714; Young v. Wheelock, 333 Mo. 992, 64 S. W. (2d) 950, 956.] Again, the appellant did not in any manner raise this point in the trial until four of respondents' witnesses had given their testimony on direct and cross-examination, and the fifth on direct, of the same tenor and effect, or raise it in the examination of respondents' four remaining witnesses on damages. This, too, precludes appellant's complaint. [Sullivan v. Union Electric, etc., Co., 331 Mo. 1065, 1082, 56 S. W. (2d) 97, and cases cited; Laughlin v. Railroad, 275 Mo. 459, 474, 205 S. W. 3; Wilkinson v. Western Union Tel. Co., 163 Mo. App. 71, 76, 145 S. W. 520, and cases cited. This testimony complained of was, therefore, *evidence* in the case and properly before the trial court for the latter's consideration and application. Also, the court declared, in appellant's instruction numbered 1, the method to be followed, in determining damages, to be the same that appellant is here contending for. And it is presumed the court followed the rules of law so declared.

■ The insistence, under the latter branch of point II, that the trial court admitted and failed to strike out testimony calculated to increase the estimate of damages because the property was being taken by condemnation, is predicated solely upon the testimony of respondents' witness John Krieger. On direct examination Krieger gave his estimate of the value of the land taken and the consequential damages to the remainder. This value was fixed as of August, 1930, as were the values of each and every other witness that testified on either side of the case on that subject. His estimate of values was $2 a square foot for the sectors taken and eighty, eighty-five or ninety cents a square foot for consequential damages to the remainders. On cross-examination he was asked to state the fair market value as between a willing buyer and a willing seller. He answered in sub-

stance that such was not the situation, that the city was arbitrarily taking the property by condemnation; that he certainly was considering those factors in fixing his values. Counsel for the city move to strike the testimony on the ground that it did not consider the fair market value or that the sale was a free one for the purpose of valuation. The court then asked the witness if he considered that in condemnation he should allow more than he would between a purchaser and seller both of whom are willing to trade. Witness answered that he certainly would. The court overruled the motion but said: "I will take that into consideration upon passing on the case finally." To which ruling exception was saved. After extended further cross-examination in which the witness detailed the various factors he took into consideration, counsel for the city renewed the motion, which was again denied and to which denial exception was saved. On redirect the witness reaffirmed (now as between willing buyer and willing seller) his values as given originally on direct examination. On the whole we think it was not error to deny the motion. In so far as the criticized testimony was improper, the improper elements tended merely to discredit the opinion of the witness and that question was properly submitted to the trier of facts for determination (Texas-Empire Pipe Line v. Stewart, 331 Mo. 525, 531, 55 S. W. (2d) 283, 285; Prairie Pipe Line Co. v. Shipp, 305 Mo. 663, 673-674, 267 S. W. 647), and any adverse effect was obviated by appellant's Instruction 1 already referred to (State ex rel. v. Young, 324 Mo. 277, 23 S. W. (2d) 130), especially in view of the circumstance that the ruling on the motion appears to have been tentative. [Cities Service Gas Co. v. Peak, 227 Mo. App. 515, 521, 54 S. W. (2d) 482.]

Taking up now the remainder of point II, which raises the question of the trial court's admitting and refusing to strike out evidence based upon future and speculative values. We have treated of this in relation to Krieger's testimony. Nowhere in the record do we find any other similar instance. We are referred to the testimony of respondents' witness Vrooman.

After relating his thirty years' experience in the real estate business in the city, his knowledge of its growth and development, his acquaintance with the intersection and properties in suit and with that section in general, he said that in order to give an opinion on the value of the sectors taken "one has to visualize somewhat." Counsel for the city objected to his doing that. A colloquy ensued between court and counsel as to the elements for consideration in determining market value of the properties as of the date of the taking. The previous question being repeated, the witness proceeded discursively to relate his own experience in exploiting that class of property and to extol the properties in suit. Counsel for the city objected "to that part of his answer which pertains to his develop-

ment,'' as misleading because the witness's ability in that line would be the governing factor. The court overruled the objection, saying: ''He hasn't any great monopoly on that.'' Exception taken and saved. The witness then gave relevant testimony of weight and value—which will be referred to later—in direct and cross-examination, without further interruption or objection being made. We regard the point made on the overruling of the motion and the objection as being wholly without merit, and observe that if other speculative and future elements of value got into the case, as is urged, they were injected by the cross-examinations conducted by appellant's counsel, were cured by appellant's Instruction No. 2, which expressly excluded speculative values, and are in other respects ruled by the conclusions reached in the paragraph next proceeding.

The next point is that the trial court disregarded the sales that were in evidence. The argument made in support of this contention seems to proceed on the theory that the claimed disregard is established by the alleged future and speculative appraisements made by respondents' witnesses, which appraisements are higher than those of appellant's four witnesses and the prices realized in the various previous sales. One of the premises—future and speculative values—relied upon to support appellant's conclusion has been removed by the disposition made above of point II.

With respect to the matter of sales. There were ten received in evidence, mostly of acreage properties, sold as such. When figured on a square foot basis the sales prices of these ranged from four cents up to twenty cents. One parcel, a corner lot, brought, on November 29, 1929, $1.33 a square foot. This lot was located at the intersection of Goodfellow and McLaren avenues, a half-mile distant from the proposed traffic circle. In dates the sales were in the 1926-1929 period. The Buselaki tract was purchased July 15, 1926, for $7,000 an acre (about 16½ cents a square foot), and the Hampton-Yore tract August, 1928, for $10,000 an acre (about 20 cents a square foot). There was evidence tending to show that of all of the other sales the Goodfellow-McLaren lot mentioned above was the most nearly similar and comparable to the parcels in suit. There was also evidence tending to show that in August, 1930, these parcels were of a value considerably greater than the lot just mentioned on account of superiority of location and of other advantages detailed in evidence.

It is not to be gainsaid that evidence of sales in proceedings such as this, if within the established rules of competency, are of generally recognized importance on the question of values. This rule is stereotyped and in substance runs thus: Sales of property similarly located to that involved in the cause, and made in the neighborhood reasonably near the time in question, are admissible to aid the triers of

fact in determining the damages to which the owner is entitled. [Met. St. Ry. Co. v. Walsh, 197 Mo. 403; School District v. Phoenix Land & Imp. Co., 297 Mo. l. c. 342, and cases cited.]

The importance of any such sales depends, of course, upon the degree of nearness of the sales in point of time and the proximity of the properties, of similarity in location and in the uses to which the properities may be adaptable. Touching these factors there was much testimony given pro and con, and considerable difference of opinion among the witnesses. There was a difference also upon matters incidental to the factors mentioned, such as the surroundings and the lay of the properties; the adjacency to paving, to sewers and other improvements. One witness went so far as to say that none of the sales properties "in that section of the city is similarly located and of the same character as these two pieces. The location is peculiar to itself. . . . There is no other corner like that with so many intersections coming in."

Most certainly it was the function of the trial judge, as the trier of the facts, to resolve and determine these and other conflicts in the evidence, and he is presumed to have done so. That is not, as the appellant concedes, a function of the appellate courts. This point is ruled against the appellant.

Whether the decision of the court below is supported by substantial evidence is, of course, a quite different question. This question is raised in appellant's point IV. Appellant's theory appears to be that its preceding points are well taken and its argument stresses virtually the same matters in this connection. In determining this contention we need only to consider the facts related herein above and to refer briefly to a few of the essentials of the testimony of respondents' witnesses on values and damages, first directing attention to the qualifications of such witnesses, each one of whom was engaged and had many years' experience in the real estate business in the city of St. Louis, their qualifications being established in most instances and admitted in others.

The examination and cross-examination (mostly the latter) fills a hundred pages of the printed record. The elements that entered into the valuations and assessments made were investigated and developed with particularity and in great detail. The fact that the taking of the sectors left the remainders with concave curved fronts was said to be a great detriment, not practicable to build on, or in any wise desirable. It was said, in view of the customary routing of traffic in traffic circles, that the properties on the margin are served merely by one-way traffic, whereas the corners as existing have advantages from multi-way traffic, and advertising advantages from the prominence of the corners, which makes them visible from a distance and readily approachable on either front.

Mr. Claude E. Vrooman, reference to whose testimony is made in a preceding paragraph, assessed the damages in the manner that appellant contends is the only correct manner, and he is conceded by appellant to have done so. He expressed the opinion, at the end of his process of appraisal, that the net damages to the Buselaki parcel was $16,000 and to the Hampton-Yore parcel $22,000. His evidence alone would constitute substantial evidence. [City of St. Louis v. Turner, 331 Mo. 834, 845, 55 S. W. (2d) 942.]

Geraldin assessed $16,392 ($2 a square foot) for the Buselaki part taken (8,196 square feet) and $5,620 ($1 a square foot) for consequential damages to the remainder; $21,000 for the Hampton-Yore part taken (10,684 square feet, at $2 a square foot) $21,368 and $1,380 for consequential damages to the remainder.

And other witnesses' values and damages are slightly variant from the above and among themselves, one higher than the above and the others lower, but none lower than the amounts reported by the commissioners and confirmed by the trial court. We think the evidence is substantial. These opinions of witnesses, grounded as they are on knowledge and experience, are *evidence*, as we said above, and its value was for the trial judge in this case. [Spencer v. Railroad, 317 Mo. 492, 1. c. 503, 297 S. W. 353.]

Last for consideration is the contention that the damages adjudged by the trial court are flagrantly excessive. This is predicated upon the claimed feature of speculative and future values and the disparity between the opinions on values expressed by appellant's witnesses and those of respondents.

Unquestionably the appellate courts may, in a proper case, interfere where the damages in condemnation are grossly excessive or inadequate. [City of St. Louis v. Turner, 331 Mo. 834, 842-843, 55 S. W. (2d) 942.] But they will decline to do so unless the question is properly raised and brought to the attention of the trial court by motion for new trial, exception saved to the ruling thereon, and properly raised on appeal as error. [Cape Girardeau, etc., Road Co. v. Dennis, 67 Mo. 438, 441; Young v. Wheelock, 333 Mo. 992, 64 S. W. (2d) 950, 956.] In our examination of the record in the instant case we have found no such ground stated in the motion for new trial. And had the question been properly saved, we should not, in our view of the evidence, reverse the judgment on that ground.

Some slight argument is made by the appellant on the subject of benefits. This question was neither saved below nor assigned here for error.

There being no prejudicial error in the record, the judgment of the circuit court is affirmed. All concur, except *Coles, J.*, not sitting.