**STATE of Missouri ex rel. STATE HIGH-
WAY COMMISSION of Mis-
souri, Respondent,**

**v.**

**Arthur H. HAMEL et al., on Exceptions of
Eugene G. Tighe, Appellant.**

**No. 51681.**

Supreme Court of Missouri,
Division No. 2.

July 11, 1966.

Robert L. Hyder, Jefferson City, Edwin B. Brzezinski, Kirkwood, for plaintiff-respondent.

Carl E. Starkloff, Walter Wehrle, Clayton, for defendant-appellant.

STOCKARD, Commissioner.

In this action for condemnation of land for highway purposes the jury award of just compensation to Eugene G. Tighe, the owner, was $4,000, and he has appealed. The difference between the award and the amount to which he claims he is entitled under his evidence exceeds $15,000. Appellate jurisdiction is in this court.

The land involved consisted of a vacant, unimproved irregularly shaped parcel containing 6.165 acres located in St. Louis County. From that tract respondent appropriated 2.92 acres for use in the construction of Interstate Route 70. After the condemnation suit was filed, but before the commissioners filed their report, appellant sold the remaining 3.245 acres for $12,000.

On this appeal appellant presents two points. The first, which he designates as the "principal point relied on," is that "the court erred in failing to set aside the ver-

dict of the jury and to grant a new trial by reason of the inadequacy of the jury's verdict under the evidence." Appellant argues that while there always will be a difference in opinion among appraisers as to value of land, "depending upon the client for whom they are testifying," the verdict of the jury in this case "was so inadequate as to shock the conscience of anyone who is familiar with the value of lands in St. Louis County."

Appellant's tract of land was located near or adjoining several subdivision areas developed for residential housing, but it was not subdivided into lots and was not zoned. There was no constructed street leading into the property, but nearby there were one or two "paper" streets, that is, streets shown on subdivision plats but which had not been constructed. The land was not accessible by automobile. In previous years there had been a bridge over a creek by which access could be had, but that bridge was gone at the time of the taking.

Three expert witnesses testified on behalf of appellant as to the damages sustained by reason of the result of the taking. Mr. George B. Funk, a real estate appraiser, had not been on the property until four to six months prior to trial, which was after the highway was constructed. He described the land as having a "roughly rolling" topography but "not hilly." In his opinion immediately prior to the taking the land had a value of $52,000, after the taking the remainder was worth $12,000, and the net loss to appellant was $40,000. He explained that in arriving at his opinion he had considered the general development in the area, and the influence of Pasadena Hills, a nearby residential subdivision. He also considered a sale of nearby land consisting of 7.6 acres for $80,000 to the Y.M.C.A. However, this land was located on Bermuda Avenue at the interchange of Interstate 70, and had on it a fifteen-room house which was built in 1902 but which was still in use.

Mr. Theodore Martin, a realtor, expressed the opinion that prior to the taking the

land was worth $52,000 and that the remainder after the taking was worth $24,000, leaving a net damage of $28,000. He arrived at this opinion by working out a "hypothetical subdivision." He described the land as roughly rolling, and stated that a creek had to be crossed to get to the property.

Mr. H. J. Krueger, a real estate appraiser, stated that he had been acquainted with appellant's property since the "first of the year," and that in 1954 he was familiar with vacant land in the area. He expressed the opinion that before the taking the land was worth $52,500, that the remainder of the land after the taking was worth $21,000, and that appellant's net damage was $31,500. He stated that the land included a crown or a high point and then dropped down to a watershed creek. The land taken by the State was the portion which dropped into a draw with the creek, and the portion remaining included the crown or high point.

Appellant testified that before the taking his land was worth $60,000, that he sold the remaining portion for $12,000 and that his damages were $48,000. He also offered evidence of a sale by him in 1955 of a tract of land consisting of 10.395 acres to Mr. Harry Shapiro for $94,500. This land fronted on Bermuda Street, a paved street, and the land was fairly level.

Respondent first offered evidence of two sales of nearby land which it contended was comparable. We need not elaborate on the details, but the price for one tract was $1,050.23 an acre, and the price for the other was $1,250.00 an acre. Two expert witnesses testified for respondent concerning appellant's damages. Mr. William S. Garton, a real estate broker and appraiser, testified that he had been on appellant's property prior to the taking and was familiar with it. The only access to the property was from San Diego Avenue, a "paper" street, and it was necessary to cross a creek over which there was no bridge. Based upon what he considered to be comparable sales in the area, and his experience in the real estate business, he expressed the opinion that the value of the property before the taking was $7,780.50, the value of the remaining property was $4,867.50, which he "rounded off" at $5,000, and appellant's net damage was $2,789.50, which he "rounded off" at $3,000. He commented on the sales of other land presented by appellant, but said that he did not so consider them to be comparable, and he stated his reasons therefor.

Mr. Arthur A. Schneider, a realtor and an appraiser, stated that appellant's property was vacant, unimproved land covered with trees, weeds, and scrub timber, and that a creek had to be crossed to gain access. In his opinion, the value of the land before the taking was $8,250, and the remainder after the taking had a value of $4,500, leaving a net damage to appellant of $3,700. He also stated that he did not consider the sales of other land shown by appellant to be comparable.

From the above it is clear that the verdict of the jury was supported by competent evidence. It is true that there was a substantial difference in the opinions of the expert witnesses, but the jury had before it these opinions and a full description of the land, its location, accessibility, and possible uses. From all of this evidence it was the prerogative of the jury to determine the just compensation for the taking to which appellant was entitled, and when its determination is supported by substantial evidence, as it was in this case, appellate courts should not interfere. This rule was well expressed in Empire Dist. Electrict Co. v. Johnston, 241 Mo.App. 759, 268 S.W.2d 78, 83, as follows: "Although 'the appellate courts may, in a proper case, interfere where the damages in condemnation are grossly excessive or inadequate', City of St. Louis v. Buselaki, 336 Mo. 693, 80 S.W. 2d 853, 857(9), it has been held repeatedly that an award of damages supported by substantial evidence will not be disturbed. City of St. Louis v. Schopp, 325 Mo. 480, 30 S.W.2d 733, 734(1); Prairie Pipe Line Co.

v. Shipp * * * [305 Mo. 663], 267 S. W. [647] loc. cit. 650(4), and cases there cited. A judgment in a condemnation proceeding should not be disturbed 'because of a disparity in the testimony of witnesses or even because of a seeming preponderance of the evidence one way or another,' City of St. Louis v. Gerhart Realty Co., 328 Mo. 103, 40 S.W.2d 661, 665(12); and, it has been held specifically that the opinion of one qualified witness as to the extent of damage 'would constitute substantial evidence'. City of St. Louis v. Buselaki * * [336 Mo. 693], 80 S.W.2d [853] loc. cit. 857(7)." See also, City of St. Louis v. Vasquez, Mo., 341 S.W.2d 839; State ex rel. State Highway Commission v. Tighe, Mo., 386 S.W.2d 115; State ex rel. State Highway Commission v. Koberna, Mo., 396 S.W. 2d 654, 668. The verdict of the jury was supported by substantial evidence, and we as an appellate court cannot say that the trial court abused its discretion in failing to grant appellant a new trial.

The second, and last, point on this appeal is that the trial court erred "in permitting the testimony of witnesses Goode and Thornhill to stand for the reason that the opinion offered as to the value of appellant's land was not based upon any competent evidence before the court; that the properties referred to by them were [not?] comparable in any respect to the land which is the subject of this suit."

The immediate answer is that neither Mr. Goode nor Mr. Thornhill expressed any opinion as to the value of appellant's land, or the damages sustained by him as the result of the appropriation by the State of a portion of his land. Each testified to a sale of other land contended by respondent to have been comparable. We note also that there was no objection whatever to the testimony of Mr. Goode. Mr. Thornhill testified that in November, 1953, he sold a tract of land in the neighborhood of appellant's land. When asked the sale price appellant objected "unless there is some evidence to establish to the court that this property was comparable to the subject

property." Mr. Thornhill then described the land and when again asked to state the sale price counsel for appellant said, "I renew the objection." It was overruled. This was the only objection to the testimony of Mr. Thornhill.

■ We shall assume that the latter part of this point, as we have quoted it above, is an attempt to assert that the trial court erred in admitting testimony of other sales of land which were not comparable. However, no reasons are stated. The point does not meet the basic requirements of Civil Rule 83.05(a), V.A.M.R. Disregarding this deficiency, there still is no merit to the contention. We need not set out a detailed statement of the facts shown by the evidence. The order of condemnation was entered on November 13, 1954. The sales of the two tracts of land, one of which was testified to by Mr. Goode and the other by Mr. Thornhill, occurred in November 1953. The description of each tract and its location clearly authorized a finding that it was comparable to that of appellant. "The general rule is that evidence of the sale price of property similarly located to that involved, and made in the neighborhood reasonably near the time of taking, is admissible to aid the triers of fact in determining the compensation to which the owner is entitled for the taking of the property. In re Armory Site in Kansas City, Mo., 282 S.W.2d 464, 473; Kansas City & Grandview Railway Co. v. Haake, 331 Mo. 429, 53 S.W.2d 891, 84 A.L.R. 1477. 'The importance of evidence of the sale price of other land depends upon the degree of nearness of the sale in point of time and the proximity of the property, of the similarity in location, and in the use to which the property may be adaptable.' In re Armory Site in Kansas City, supra. * * * As stated in the Armory Site case, 'In determining the admissibility of evidence of this nature there necessarily must be considerable discretion on the part of the trial judge.'" State ex rel. State Highway Commission v. Koberna, Mo., supra, 396 S.W.2d at p. 662. Appellant has not demonstrated any abuse of discre-

tion on the part of the trial judge in admitting the evidence to which complaint is now made.

The judgment is affirmed.

BARRETT, C., concurs.

PRITCHARD, C., not sitting.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All of the Judges concur.