STATE of Missouri ex rel. STATE HIGH-
WAY COMMISSION of Mis-
souri, Respondent,

v.

Rey EILERS et al. on Exceptions of Ransom
E. Dudley and Louise Dudley, Appellants,

Fulton National Bank, a corporation, and

Clyde Boyd, Trustee, Defendants.

No. 51448.

Supreme Court of Missouri,
Division No. 2.

Sept. 12, 1966.

Motion for Rehearing or for Transfer to
Court En Banc Denied Oct. 10, 1966.

Robert L .Hyder, Thomas E. Cheatham, Jefferson City, for respondent.

Robert C. Smith, Columbia, for appellants, Smith & Lewis, Columbia, of counsel.

STOCKARD, Commissioner.

In this action for condemnation of land for highway purposes the jury award of just compensation was $12,250 and the landowners have appealed. The difference between the award and that to which appellants contend they are entitled under their evidence exceeds $15,000.

Appellants' property consisted of a triangular shaped tract of land containing 8.42 acres with 1,650 feet fronting on U. S. Highway 40 and 535 feet fronting on a county road. For use in the construction of Interstate Highway 70, respondent acquired 4.65 acres upon which was located some buildings used for commercial purposes and a well which supplied water to appellants' house located on that part of the land not taken. Appellants contend in their first three points that the award is so inadequate that it denies them just compensation. In the remaining two points they assert prejudicial error resulted from the admission of certain evidence and from certain

remarks and conduct of respondent's counsel. If a new trial is required by reason of either of the last two points there would be no occasion to review the contention concerning the adequacy of the award. We shall, therefore, consider first the latter two points.

Appellants assert that the trial court "erroneously admitted into evidence photographs on behalf of the State of Missouri which had not been properly identified and which were taken long before and long after condemnation," and which "did not correctly depict the appearance of the property at the time of condemnation and which deceived the jury and prejudiced them against the appellants." Only from the argument in the brief can we determine to what photographs reference is made and the reasons why it is contended they were inadmissible. We shall set forth the factual circumstances pertaining to each such exhibit and group them when appropriate to do so.

Respondent's Exhibit 4, to which no objection is now made, was an aerial photograph of appellants' land. It was agreed that it did not show a building used for tire storage, and with this understanding the exhibit was admitted without objection. Respondent's Exhibit 5, to which objection is now made, was an enlargement of a portion of Exhibit 4. When offered in evidence appellants objected because "it does not show the tire storage building and there has been no evidence as to when this was taken, whether it correctly reflects the appearance of the property on June 11 of 1963, prior to condemnation * * *." The objection was overruled, and the witness then made reference to a ditch shown on the photograph.

Respondent's Exhibit 2 was a photograph taken at ground level on March 12, 1962 of only a portion of the buildings on appellants' land. It shows what appears to be a cluster of two or three frame buildings and a shed used for garage purposes, a wrecked or junked automobile, and a pile of debris consisting of old tires and junked automo-

bile parts. Counsel for appellants brought out from the identifying witness that there was an additional shed not shown on the photograph, apparently because it was behind the buildings shown, but the witness stated that the photograph "portrays the front" of the buildings. The objection to this exhibit, which was overruled, was that "I don't think there has been sufficient identification of that." On rebuttal Mr. Dudley, one of the appellants, was asked if the photograph "correctly shows the appearance of those garage buildings as of the time of this condemnation," and he replied, "No, it does not." He then explained that he had "bought out" a salvage yard about that time and the debris shown in the photograph had come from that yard, and that because of muddy ground the debris had not been moved to his salvage yard. After this testimony there was no request made that the court withdraw Exhibit 2 from the evidence and instruct the jury to disregard it.

Respondent's Exhibits 8, 9, 11 and 12 were four photographs of a group of nine, all taken on August 5, 1963. Exhibits 8 and 12 show the condition of portions of the driveway, and were so identified by Mr. Dudley. Exhibit 11 was identified by Mr. Dudley as showing "a corner of my house" and "my garden." The principal and predominate objects shown in the photograph were two old model automobiles parked on a grassy area. Exhibit 9 was identified by Mr. Dudley as showing the driveway, a hole "off of my driveway," and a building "in the process of being torn down." The objection to the admission in evidence of these exhibits was that "I don't think he has asked the witness to identify those in such a manner as to make them admissible." Counsel for respondent then stated that if there is "any question" concerning identification "we can call Mr. Dudley back." The objection was overruled. On rebuttal Mr. Dudley stated that Exhibit 9 did not correctly portray the condition of the property because "here's the store building which had already been removed, or in the process" of being removed, and "It looks like a little debris

around there." He further stated that "this was 90 days after the taking" and "I had abandoned the driveway completely." As to Exhibits 8 and 12 he was asked "whether those correctly portray the appearance of the driveway at the time of condemnation or possession or whether they [the photographs] were [taken] at a later time?" His answer, without any explanation, was, "No, this isn't a proper identification." There was no request that the court withdraw Exhibits 8, 9 and 12 from the evidence and instruct the jury to disregard them.

Respondent's Exhibits 16 and 17 were photographs of nearby property concerning which there was testimony indicating that comparable sales had occurred. When they were first offered in evidence, counsel for appellants objected because "There has been no proper identification," and that objection was sustained. Exhibit 16 was later admitted without objection. Exhibit 17 was then identified as a photograph of a nearby grocery store and service station which recently had been sold. The sale had previously been referred to in the testimony. The witness stated that while he had never stopped there, he had "known it" for five years, and referring to the photograph he stated that the property "looked about that way" since he had known it. The objection to Exhibit 17, which was overruled, was that it was not "sufficiently identified."

■ The general rule concerning the admission in evidence of a photograph is that the party offering it "must show by extrinsic evidence that the photograph is an accurate and faithful representation of the place, person or subject it purports to portray. This authenticity may be established by any witness who is familiar with the scene, object or person portrayed and is competent to speak from personal observation." State ex rel. State Highway Commission v. Cone, Mo., 338 S.W.2d 22, 27. "If a photograph correctly shows the situation and surroundings as far as it purports to show them, it should not be excluded because it does not show all the detailed facts

and surroundings." Brock v. Gulf, Mobile and Ohio Railroad Company, Mo., 270 S.W. 2d 827. In addition, the fact alone that a photograph of a location or an object was taken before or after an event, and before or after changes have occurred, does not make the photograph inadmissible in evidence if the extent of the changes is explained. Brock v. Gulf, Mobile and Ohio Railroad Company, supra. When those changes are explained, and "the photographs reasonably may aid the jury in arriving at an understanding of a fact or facts that have a direct bearing upon the issues," they are admissible in evidence. Davis v. Illinois Terminal Railroad Company, Mo., 307 S.W. 2d 395, 400. These points of differences between what the photograph shows and what is contended to be the actual facts may be made "the basis for cross-examination, thus enabling the jury to give proper weight to the evidence." Young v. Dunlap, 195 Mo. App. 119, 190 S.W. 1041, 1044, cited with approval in State v. McGee, 336 Mo. 1082, 83 S.W.2d 98, 107.

■ When we examine the circumstances of the admission in evidence of the various photographs to which complaint is now made in the light of the above rules it is obvious that no prejudicial error occurred. Exhibit 2, an aerial photograph did not show a building used for tire storage, apparently because the building was not there when the photograph was taken, but the photograph accurately portrayed the remainder of appellants' property. The absence of the one building was explained to the jury. Exhibit 5 was an enlargement of a portion of Exhibit 4 which was admitted without objection. There is no challenge to the accuracy of Exhibit 5 as an enlargement. Exhibits 8, 9, 11 and 12 were identified as being photographs of portions of appellants' property. Appellants could explain any differences from what they contended were the actual facts, and they attempted to do so as to three of them. However, that did not destroy their admissibility, but presented an issue to the jury to determine what weight, if any, it would give to the photo-

graphs. No objection was made to Exhibit 16, and none can now be made. The identification of Exhibit 17 was sketchy, but it pertained to a collateral matter, and there has been no demonstration of prejudice even if the identification be considered insufficient, and we do not so consider it. Finally, "the admissibility of such evidence [photographs] is largely within the discretion of the trial court, and, unless that discretion is abused, the ruling will not be disturbed on appeal." Brock v. Gulf, Mobile and Ohio Railroad Company, supra, 270 S.W.2d at p. 833. While the identification of the photographs in some instances could easily have been more complete, there was no abuse of discretion on the part of the trial court in admitting them, and no prejudice resulted.

■ Appellants' next point relied on is that the trial court "erred in admitting improper evidence and not granting a new trial" because the "cumulative effect" of argument and statements of respondent's counsel, and the errors of the trial court in admitting improper evidence "inflamed and prejudiced" the jury against them. Subpoint A refers to "improper and inflammatory remarks and argument" without setting out the remarks and argument. In the argument portion of the brief appellants state that respondent's counsel was not satisfied merely to introduce photographs taken months after the date of condemnation, but "continually displayed them before the jury and used them in examination of witnesses," and repeatedly invited the jury "to look at the improperly admitted photographs and utilized them in inflaming the jury in his final argument." We have previously held that the admission of the photographs was not improper under the circumstances. Therefore, respondent's counsel was entitled to show them to the jury, to use them in the examination of witnesses, and to refer to them in his oral argument. Appellants' charge of improper use of the photographs does not prove itself. They make reference to four pages in the transcript containing argument to the jury by respondent's

counsel. We find nothing improper on those pages, and in any event no objection whatever was made.

■ Appellants next assert that counsel for respondent "referred to appellants' witnesses as 'Jaybirds' and made derogatory remarks and references to the fact that defendants were from Callaway County, and at one point shouted 'The Kingdom of Callaway is here boys, they're here in force,' in an effort to arouse the passions of the jury against the defendants and their witnesses." The compelling and immediate answer to this complaint is that no objection whatever was made to the trial court at the time of the occurrence. However, we have read all of the argument, and when read in context we doubt that the portions complained of are subject to the charges made even though counsel did use the word "Jaybirds" and make the statement pertaining to Callaway County. Certainly, the argument was not of the nature to call for corrective action by the trial court without an objection being made, see Critcher v. Rudy Fick, Inc., Mo., 315 S.W.2d 421, 427, and the incidents did not constitute plain error affecting substantial rights within the meaning of Civil Rule 79.04, V.A.M.R.

■ Subpoint B refers to "improper remarks and interrogation during trial" without setting out any specific incident. In fact, the incidents are not set out in the argument, but only page references are given. We have read the pages referred to, and such other pages as are necessary to gain the complete picture. In three of the instances the objection was sustained, and in one of those we are of the opinion that the remark objected to was invited. The other two objections were to counsel "yelling" at the witness and "arguing" with him. One objection was specifically overruled and the other was overruled by implication. Whether "yelling" at the witness occurred cannot be determined from the record, but the trial judge was there and witnessed the incident, and apparently he was not impressed by the objection as made. It is questionable that it can be said that objectionable argument with the witness occurred. In each case we gather the impression of a reluctant or evasive witness. In any event, complaints as to these matters were not specifically mentioned in the motion for new trial, and even if they were they are matters which lie within the discretion of the trial court, and there is no showing of an abuse of discretion.

■ Subpoint C is that the court "erroneously allowed the admission of evidence of the cost of other properties sold during depression years to come before the jury." The testimony referred to is nowhere set out in the point or even in argument and there is no page reference where it may be found. The incident to which reference is intended occurred during the cross-examination of Homer Owen, an expert witness of appellants on the issue of damages. He testified that he had previously purchased six houses, and he volunteered the information that "some of them was bought back there in the depression." There was no contention that these properties were comparable to that of appellants or that these sales were comparable to that of appellants or that these sales were comparable sales. The matter was gone into in reference to the qualifications and experience of the witness, and no objection was made on the basis of the contention now advanced on this appeal.

■ Subpoint D refers to "actions of the attorney for [respondent] in attempting to inject evidence concerning the assessed value of appellants' property." No reference to this incident appears in the motion for new trial. On cross-examination counsel for respondent asked Mr. Dudley if he had ever made "any representations" as to the value of his property. The witness stated that he had "no knowledge of that." He then was asked if he had expressed an opinion of value "for the purpose of obtaining credit," and the answer was, "I just don't know." He was then asked if he had ever made "any representation to the tax

assessor as to your opinion of its value." An objection to this was sustained, but counsel was then permitted to ask if he had ever appeared "before the board of equalization or the tax assessor, any such agency, and make representation or argument as to the value of your property." The answer was, "I did not." The valuation of appellants' property for tax purposes was not asked for and was not disclosed. Therefore, the cases cited by appellants, Kansas City & Gulf Ry. Co. v. Haake, 331 Mo. 429, 53 S.W.2d 891, 84 A.L.R. 1477; and St. Louis Housing Authority v. Gordon, Mo. App., 382 S.W.2d 451 are not in point. Respondent asserts that it was entitled to determine whether or not Mr. Dudley had made any declarations against interest. We do not rule whether the questions were or were not proper for this purpose. The matter was not preserved for appellate review in the motion for new trial, and assuming an impropriety the circumstances do not bring the incident within the scope of Civil Rule 79.04, V.A.M.R.

 Subpoint E is that counsel for the respondent "wrongfully attempted to call a witness to the stand who had not excluded himself from the courtroom during trial when the court had excluded all witnesses." The record shows that after the testimony of three witnesses counsel for respondent stated to the court that he had "planned to rest, but because of one fact that was brought up, I want to call Mr. Huffman for just two brief questions." Counsel for appellants objected because "The witnesses have all been excluded, in this case and he's been here during all the testimony in this case." The transcript does not show that the witnesses were excluded, but apparently it is agreed that they were. However, the trial court sustained the objection and Mr. Huffman did not testify.

We have set out in detail the various matters about which appellants complain, and in doing so we have not adhered strictly to our rules pertaining to the preservation of matters for appellate review and to the presentation of points in briefs. See Domi-

jan v. Harp, Mo., 340 S.W.2d 728. From what we have set out it is apparent that no individual item of complaint, nor the accumulation of all matters complained of, constitute prejudicial error requiring or justifying a new trial. This was a vigorously tried case with numerous objections and comments by counsel for both sides. Our impression from reading the record is that the trial court conducted the trial in a commendable fashion. We find nothing in the above matters complained of which was prejudicial to appellants.

We turn now to the contention that the verdict is inadequate. Appellants assert that it "did not compensate [them] for all of the property taken and was inadequate," and they should have a new trial because the "verdict of $12,125 * * * was grossly inadequate and the trial court erred in not granting a new trial for that reason."

There is no occasion to set out in detail all the evidence concerning damages, which was the only issue in the case, and which comprises almost 600 pages in the transcript.

Appellants used their land for the operation of a garage business, a salvage business in dismantling junked and wrecked automobiles, a general store, storage facilities for purchased wool and furs, and a residence. Photographs offered by both appellants and respondent were received in evidence, and in addition the jury had the benefit of the testimony of Mr. Dudley concerning the use and condition of the buildings, the business conducted by him on the land, and the condition and possible use of the land remaining after the taking of a portion for the highway. The jury was also given a full description of the buildings, facilities and property that were taken, and the effect on the remainder of the land. It can fairly be said that both parties vigorously and fully presented their evidence as to the physical property, each presenting the features believed to best support their respective positions, and each cross-examined vigorously the witnesses of the other party. Mr. Dudley testified at length concerning the value of the property taken, and

as to the damages resulting from the taking. He valued his property before condemnation at $42,000, and stated that the value of the remaining property was $9,500. He explained in detail how he arrived at the above figures, and itemized carefully the various elements of damage, the total of which was $32,500. Appellants called seven persons who qualified as expert witnesses on the issue of value of property, three of whom were the commissioners appointed by the trial court to determine and report the damages sustained by appellants. Each of these witnesses testified what in his opinion was the value of appellants' property immediately before and immediately after the taking. The highest value before the taking was $37,000, and the lowest was $32,675. The highest value after the taking was $10,000 and the lowest was $5,000. The highest estimate of appellants' damages was $30,000 and the lowest was $27,000. Each witness went into considerable detail to explain how he arrived at his opinion as to damages, and each itemized the various elements of damages. All were subjected to vigorous cross-examination.

Respondent called three expert witnesses on the issue of damages. There is no challenge to their qualifications, and there is no objection to the procedure or method used by them in arriving at their opinions of value and damages. Each expressed an opinion of the value of appellants' property immediately before and after the taking. The values before the taking were $14,600, $12,750, and $18,825. The values after the taking were $7,600, $7,000 and $6,700. The opinions of the damages sustained by appellants were $7,000, $5,750 and $12,125. Each of these witnesses carefully detailed and itemized his estimate of the damages, and each witness was cross-examined at length.

■ Appellants now argue that this court should reverse the judgment and grant a new trial because they have not received just compensation for the taking of their property. In support of this contention they have outlined in detail in their brief the estimates of the value of the various items of property taken, and the damages to the remaining property, as testified to by *their witnesses alone*. They cite and rely principally upon State ex rel. State Highway Commission v. Belvidere Development Company, Mo., 315 S.W.2d 781, and in their brief they set up in columns the factual matters of each case to demonstrate that the two cases are comparable. However, in the Belvidere case the trial court granted a new trial on "the specified ground that the verdict was against the weight of the evidence". In that case it was held that "it was the province of the trial court to determine the relative weight of the conflicting evidence; so it should not be held * * * that the trial court abused its discretionary power in granting a new trial on the stated ground" because there was substantial evidence to sustain the trial court's view. In the pending case, after determining the relative weight of the conflicting evidence in ruling on the motion for new trial, the trial court refused to grant a new trial. Our task in this circumstance is to determine whether the trial court abused its discretion, and in doing so, as in the Belvidere case, we determine whether there is substantial evidence to sustain the trial court's view. The rule, as recently stated by this court, is as follows: " 'Although "the appellate courts may, in a proper case, interfere where the damages in condemnation are grossly excessive or inadequate", City of St. Louis v. Buselaki, 336 Mo. 693, 80 S.W.2d 853, 857(9), it has been held repeatedly that an award of damages supported by substantial evidence will not be disturbed. City of St. Louis v. Schopp, 325 Mo. 480, 30 S.W.2d 733, 734(1); Prairie Pipe Line Co. v. Shipp, * * * [305 Mo. 663], 267 S.W. [647] loc. cit. 650(4), and cases there cited. A judgment in a condemnation proceeding should not be disturbed "because of a disparity in the testimony of witnesses or even because of a seeming preponderance of the evidence one way or another," City of St. Louis v. Gerhart Realty Co., 328 Mo. 103, 40 S.W.2d 661, 665(12); and, it has been held spe-

cifically that the opinion of one qualified witness as to the extent of damage "would constitute substantial evidence." City of St. Louis v. Buselaki * * * [336 Mo. 693], 80 S.W.2d [853] loc. cit. 857(7).' " State ex rel. State Highway Commission of Missouri v. Hamel, Mo., 404 S.W.2d 736. See also City of St. Louis v. Vasquez, Mo., 341 S.W.2d 839; State ex rel. State Highway Commission v. Tighe, Mo., 386 S.W.2d 115; State ex rel. State Highway Commission v. Koberna, Mo., 396 S.W.2d 654, 668.

 It is true that in this case there was a substantial disparity between the evidence offered by appellants and by respondent on the issue of damages resulting from the taking of a portion of appellants' property. It may be that if the trial court after determining the relative weight of the conflicting evidence, had concluded that the verdict was against the weight of the evidence and had granted a new trial, we as an appellate court would affirm the exercise of that discretion as was done in the Belvidere case. But, while "The trial court may pass upon the weight of the evidence; we cannot." State ex rel. State Highway Commission v. Flynn, Mo.App., 263 S.W.2d 854, 856; State ex rel. State Highway Commission v. Anderson, Mo.App., 367 S.W.2d 809, 811. Therefore, "We determine only whether the trial court abused its discretion in overruling [appellants'] motion for new trial on the ground of inadequacy of verdict." Roush v. Alkire Truck Lines, Inc., Mo., 245 S.W.2d 8, 10. As previously noted, an award of damages in a condemnation case will not be disturbed on appeal when it is supported by substantial evidence, and a properly admitted opinion of a qualified witness as to the extent of damages would constitute substantial evidence. There is no question but that the three expert witnesses who testified for respondent were qualified, and that their testimony was properly admitted. We necessarily must hold that their testimony constituted substantial evidence supporting the verdict. See State ex rel. State Highway

Commission v. Hamel, supra; State ex rel. State Highway Commission v. Anderson, supra. It was the prerogative of the jury from all the evidence in the case to determine the just compensation to which appellants were entitled for the taking of a portion of their land, and when the trial court had denied a motion for new trial after the exercise of its authority to determine the relative weight of the conflicting evidence, and the jury's determination is supported by substantial evidence, as it was in this case, appellate courts may not interfere with that determination.

The judgment is affirmed.

BARRETT, C., concurs.

PRITCHARD, C., not sitting.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All of the Judges concur.