STATE of Missouri ex rel. STATE HIGH-
WAY COMMISSION of Missouri,
Plaintiff-Appellant,

v.

E. A. THURMAN et al., the Exceptions of
Robert Lerche et al., Defendants,

Robert Lerche, Freddie Lerche, Fred Lerche
and Mattie Lerche, his wife, De-
fendants-Respondents.

No. 32736.

St. Louis Court of Appeals.

Missouri.

April 16, 1968.

Roberts & Roberts, Raymond S. Roberts, Farmington, Stan Murphy, Sikeston, Robert L. Hyder, Chief Counsel, State Highway Commission, Jefferson City, for plaintiff-appellant.

Schnapp, Graham & Reid, Fredericktown, for defendants-respondents.

BRADY, Commissioner.

Trial in this condemnation action resulted in a judgment for damages in favor of defendants in the sum of $4,500.00. The allegations of prejudicial error raised on appeal by plaintiff deal with the trial court's rulings upon certain evidence offered by both defendants and plaintiff, and the contention the award was excessive as a result of the trial court's erroneous rulings.

During the trial defendants called William L. A. Mooney as a witness. Mr. Mooney is the County Collector for Madison County wherein defendants reside. During his direct testimony he gave his opinion the damages suffered by defendants as a result of this condemnation amounted to $8,300.00. On cross-examination of Mr. Mooney the following occurred: "Q. Mr. Mooney, you're the County Collector? A. Yes sir. Q. How long? A. Seven years. Q. Made how many races? A. Two. Q. The Lerches and all the other people along the Highway 67 that have these condemnation cases are all potential voters, aren't they? A. If they are 21 they are, yes sir. Mr. Schnapp: That's completely, Your Honor, I object to this as being completely beyond the scope of the trial of this case and ask the question be stricken from the record and the jury advised to disregard it. The Court: Sustained, I think it has no merit other than to prejudice the jury and I'll sustain the objection. Mr. Schnapp: Because of the highly inflamatory and prejudicial and concieved (sic) by counsel I'm forced to ask for a mistrial because of that. The Court: Overruled, you may step down." Out of the hearing of the jury plaintiff's counsel made the following motion: "At this time, Your Honor, I want to object to the remarks made by the Court, 'it could only be introduced to prejudice the jury,' for the reason that this was cross examination of a witness, who is obviously politically inclined and I was cross examining him on his knowledge of various people in connection with making this value that he placed on this land and the remarks of the Court that it could be introduced only for the purpose of prejudicing this jury is highly prejudicial to the plaintiff in this lawsuit and because of those remarks I move this jury be discharged and it be declared a mistrial. The Court: Overruled, lets move on."

At another point in the trial defendants introduced evidence tending to show the

presence of a highway required better fencing and diminished the value of the defendants' land for use as a stock farm. What happened was that a witness Skaggs was offered by defendants who testified as to defendants' use of this land for such purpose. During his testimony the following occurred: "Q. And now then, Charlie, do stock farms, live stock farms, increase in value because of a new road? A. No sir, they do not. Q. Why not? A. Well, you have a problem of maintaining a fence and not only building it but also maintaining it, there's more expense attached to it, a certain element of danger. Q. Now, if a willing purchaser, desiring a livestock farm operation, does he want a super highway across his property? A. It depends a whole lot on whether he desires to live there, but as a normal rule, no, if he's a livestock man, no. Mr. Schnapp: That's all." The witness Robert Lerche testified as follows: "Q. Now in difference (sic) to the Court and the jury when there is an objection made don't answer the question until the Judge has ruled, I know this is the first sime (sic) but be that as it may I try to remember those things. Q. Now, Bob, why? A. Who wants a stock farm close to one of these highways, you got to keep better fences up and more worry about your livestock getting out and no farmer wants his livestock to get out and maybe kill someone else, you have to carry insurance. Mr. Roberts: Just a minute, Your Honor, I want to object to that, that gets into a relm (sic) of something that is of maybe, possibly of a criminal nature or a damage nature and it is not element of damage in this type of a law suit in a condemnation proceeding. Mr. Schnapp: We're not claiming damages for that, Your Honor. Mr. Roberts: He's testifying as to that's why no one would buy it as a stock farm and that's not admissible for that type of evidence in a condemnation proceeding, Your Honor, because it gets into the relm (sic) of speculation, gets into the relm (sic) of crimianl (sic) activity and gets in the relm (sic) of personel (sic) damages for livestock or cars. The Court: Sustained.

Mr. Roberts: Will the Court instruct the jury to disregard it? The Court: The Jury will disregard it. Q. I ask this, Robert, does Madison County, Missouri, have a stock law? A. Yes." Later in the trial the defendants' witness Fellows testified as follows: "Q. What's the highest and best use of this property, John? A. Best use for it? Q. Yes A. As a stock farm. Q. Now, would this highway add anything at all to the value of this as a stock farm? A. Absolutely not. Q. It decrease the value? A. It will. Q. And that's the reason for these damages? A. That's it. Q. Would you care to explain to the jury, in your own words, in your own language, why it would decrease it? A. The first thing, the fencing, as I know, I got a farm of my own and I know exactly what it does and to fence that the way it should be fenced to keep the cattle off the highway. Mr. Roberts: If the Court please, I'm going to object to that it's already testified they have the stock law here and they have to fence their farm land to keep their cattle in, its a stock low (sic) it's just the same whether there's a highway there or any other land and the fencing to keep cattle off the highway is highly prejudicial to this jury and we object to that as not being an element of damage. The Court: Overruled, lets move along."

The defendants' witness Fred Lerche testified as to this same issue. The questions asked of him and the answers given were as follows: "Q. Whats the highest and best use you can make of this land, Mr. Lerche. A. Well, its a stock farm, that's about all it's fit for, it's grazing land and so on. Q. Why did you say that, that it wouldn't increase the value? A. Well, I never, I always like to be off the road, I've handled a lot of cattle in my time and pastured lots of places, and I think, I don't like a highway, passage on the highway, you usually get into more trouble than if you're off some other where. Q. Does that effect (sic) the market value? Mr. Roberts: Just a minute, sir, if the Court please, I object to the words, he usually gets into more

trouble on the highway, that's get into again the relm (sic) of possibly violation of Civil or Criminal law and it doesn't prove or disprove any issues here, in fact its not an element of damage. The Court: That's true, the answer will stand, objection will be overruled. Q. Mr. Lerche, does that effect (sic) the fair market value of real estate in the mind of a fair market purchaser of a livestock farm? A. It does in my opinion."

The plaintiff offered the testimony of the witness Crutcher, a real estate appraiser, who explained to the jury the method he used to appraise real estate. He was asked to relate his procedures or methods in making an appraisal and testified: "A. Well, ordinarily, if I don't know some of the real estate brokers in that area, well, I contact them and get acquainted with them and get acquainted with different properties that's sold that similar to the kind that I'm making an appraisal of and I check with them and check the records for the same type property you're going to appraise, if it isn't secret information like for a shopping center or something like that, and then you check these farms out and compare them with the type of property that you're appraising, if the improvements are better or worse why you adjust the price either up or down according to your opinion which you think the market value would be." On cross-examination the following questions were asked and answers given: "Q. All right, did you find where Mr. Pogue, Mr. Pogues, though, was a cohort of your's on these appraisals, wasn't he? A. No sir, not on these. Q. Didn't he work with you? A. No sir, the only information I got from Mr. Pogue on any of this property up here was to ask him if he knew of any property that, * * * Q. Now, Mr. Crutcher, * * * Mr. Roberts: Now, just a minute, Your Honor. The Court: He hadn't finished his statement. Mr. Schnapp: I'm sorry, finish the question. A. I'm through. Q. Now, Mr. Crutcher, isn't it true that Mr. Addie Pogue appraised the same land for the State Highway Commission of the State of Missouri at relatively the same time you did? A. No sir, not on this. Q. He made no appraisal at all here on this? A. As far as I know, no sir. Q. And haven't you conferred with him about these appraisals? A. The only thing I conferred with Mr. Pogue was, to find out if he knew of any sales. Q. Now, Mr. Crutcher, at the time of the Thurman trial in Madison County, Missouri, isn't it true that you and Addie Pogue went into the jury room prior to the commencement of that trial with the attorneys and conferred relative to values of real estate in Madison County, Missouri? A. I don't remember that, no sir. Mr. Roberts: Just a minute, the Court please, I object to that for the reason it's immaterial, it's calculated for nothing else than to prejudice this jury and whether we attorneys conferred with him or not, he said he talked to Mr. Pogue, I can state to you now that Mr. Pogue did not appraise this property or any part of it on Highway 67, to correct Jerry, he appraised on 72 but not on 67. Mr. Schnapp: I object to Mr. Roberts' statement in the presence of this jury, Your Honor, as to this element, as not being under oath. The Court: The jury will disregard the statements made by counsel and they will be striken (sic) from the record and jury will disregard it, objection will be overruled and now let's proceed." Later on cross-examination defendants' counsel returned to the same issue and the following occurred: "Q. So you did go out with Mr. Pogue to appraise that land? A. No sir, not to appraise the land to check some comparable sales. Q. Didn't Mr. Pogue tell you about selling some land within two miles, in the same survey to a Mr. Carran? A. I don't remember if he did."

Plaintiff's first allegation of prejudicial error deals with the action of the trial court with reference to the defendants' witness Mooney, County Collector of Madison County. The attack made is two-fold in nature. Plaintiff first alleges, as stated in its brief: "The Trial Court Erred in Refusing to Permit Plaintiff to Inquire of Defendants' Witness Mooney * * *

Whether or Not the Landowners for Whom He was Testifying Were Voters, * * *." The excerpt from the transcript set out in this opinion shows that the question asked of Mooney was answered prior to the objection made by counsel for defendants. Counsel for defendants also asked the question be stricken and the jury advised to disregard it but the trial court merely sustained the objection and did not act upon the other requests for relief. The transcript does not disclose any further attempt by plaintiff to make similar inquiries nor action by the trial court preventing it from doing so.

■ There is no merit to this portion of plaintiff's allegation of error. Plaintiff was not prevented from inquiring of Mooney in the manner it so desired. To the contrary, the transcript discloses plaintiff did ask the question, it was answered, and the jury was not instructed to disregard the answer. Moreover, this is not a situation where there was no opportunity to object. See Doherty v. St. Louis Butter Co., 339 Mo. 996, 98 S.W.2d 742, as cited in Brown v. Parker, Mo.App., 375 S.W.2d 594, 1.c. 601. Under the factual situation here involved plaintiff's objection, made after the question was answered, came too late to preserve any allegation of error as to the trial court's ruling. Minks v. Smith, Mo. App., 367 S.W.2d 6, 1.c. 8.

■ The main burden of plaintiff's brief as to this allegation of error is directed toward its contention the trial court should have granted a mistrial due to the comments the court made when sustaining the objection. Plaintiff cites and relies upon Duncan v. Pinkston, Mo., 340 S.W.2d 753. The trial court would have been better advised not to have made its comment as it is improper and error for a judge, by act, conduct, remarks or comments to indicate any deviation from the status of neutrality he must maintain during the trial. See Bextermueller v. Busken, Mo.App., 376 S.W.2d 621, 1.c. 629, and cases there cited including Harms v. Simkin, Mo.App., 322 S.W.2d 930. However, this case does not involve conduct of the serious nature found in those cases and the trial court's comment, when placed in the context of this transcript, did not render plaintiff's entire case suspect. The trial court's comment was erroneous but, under the circumstances here involved, not prejudicial and so does not require action on our part.

■ The second allegation of error is: "The Trial Court Erred in Permitting Defendant to Show, as an Element of Damages, the Presence of the Highway Required Better Fencing and Exposed a Landowner to Greater Liability for the Escape of Cattle for the Reason That Such Evidence Contemplated Future Tortious Conduct and Is Contrary to the Requirements of the Stock Law." We need not decide the merits of this contention for the reason that the transcript shows plaintiff waived any objection it might have had to such evidence. The witnesses Skaggs, Robert Lerche, Fellows, and Fred Lerche testified as to this matter. There is a matter worthy of note in connection with Robert Lerche's testimony on this issue. Immediately before giving the testimony of which plaintiff complains, Robert Lerche had answered a question as to another matter while there was an objection. His counsel told him not to do so. Immediately following this admonition the question here involved was asked and counsel for plaintiff failed to interpose an objection until after the answer. In any event, the objection was sustained and the jury instructed to disregard the answer as plaintiff requested. Plaintiff thus received all the relief it requested and this incident cannot support plaintiff's allegation of error. Later in the trial the witness Fellows testified to the same matter. Again the objection was made after the answer was given. When Fred Lerche was testifying the transcript discloses that there was no objection interposed when he was first asked about this matter and his answer was not attacked in any other manner such as a request to strike, etc. Only when another question was asked was an objection interposed. It also

should be kept in mind this transcript fails to disclose any request by plaintiff's counsel that the court instruct defendants' counsel to cease his inquiry into this matter. It is well settled in Missouri that where previous testimony to the same effect has come into the case without objection the continued admission of such testimony even if it be erroneous is harmless error. Mo.Digest Appeal and Error, ☞ 1050(1). In the instant case the transcript discloses the evidence came in without objection upon the testimony of the witness Skaggs; the evidence was again developed during the testimony of the witness Fellows and the objection made too late; and the evidence again came in with a late objection during the testimony of the witness Fred Lerche. Under such circumstances it is unnecessary to rule whether or not the trial court's ruling was proper for the reason that even if such evidence was erroneously admitted in the later instances its admission constituted harmless error.

■ Plaintiff's next allegation of prejudicial error goes to the trial court's action with regard to the testimony of the witness Crutcher as to whether or not a Mr. Pogue was involved in Crutcher's appraisal of this property. We think it important the exact language of the allegation of error be stated. It reads: "The Court Erred in Permitting the Defendant to Repeatedly Inquire * *" as to this matter " * * * Because This Was a Prejudicial Comment Upon the Failure to Call a Witness Equally Available to Both Sides." As shown by the excerpts from the transcript set out earlier herein the only objection made to testimony by Crutcher as to this issue came after he answered an inquiry whether he and Pogue went to a jury room prior to the commencement of another trial and conferred with counsel in that action regarding the values of real estate in this particular County. We have already held objections made after the answer was given preserve nothing for our review. In its brief plaintiff asserts that the trial court interrupted its earlier attempt to object and that is one interpretation to

be drawn from the transcript excerpt showing an interruption to allow the witness to finish his answer. However, the witness did not continue with his answer although given an opportunity to do so and counsel did not thereafter renew his objection if that was indeed his intention. In any event, the allegation of error as stated deals with the trial court's action permitting defendants to "Repeatedly Inquire" into this matter over objection. The transcript clearly illustrates only one objection was made and that after the answer was given. There is no merit to this allegation of error.

■ Plaintiff also contends the verdict of the jury was excessive and was the result of the cumulative effects of the errors allegedly committed by the trial court together with bias and prejudice on the part of the jury. The actions of the trial court of which plaintiff complains do not constitute prejudicial error. In addition, there is absolutely no evidence to show any bias and prejudice on the part of the jury and the plaintiff cites none in its brief.

■ There is another reason this allegation of error is without merit. In a proper case appellate courts may interfere in condemnation actions where damages are grossly excessive or inadequate. City of St. Louis v. Buselaki, 336 Mo. 693, 80 S.W.2d 853 [9]. But an award of damages supported by substantial evidence will not be disturbed. See Empire Dist. Elec. Co. v. Johnston, 241 Mo.App. 759, 268 S.W.2d 78, l.c. 83, and cases there cited; State ex rel. State Highway Commission v. Hamel, Mo., 404 S.W.2d 736. In the instant appeal there is testimony the defendants had been damaged in the amount of $10,000.00; in the amount of $8,000.00; in the amount of $8,600.00; and in the amount of $8,300.00. The verdict was in the amount of $4,500.00. There is no complaint as to the instruction on the measure of damage nor is this evidence otherwise attacked in this appeal. Under these circumstances we would have no right to substitute our view as to the ex-

tent of the damage for that of the jury. Empire Dist. Elec. Co. v. Johnston, supra.

The judgment is affirmed.

PER CURIAM.

The foregoing opinion by BRADY, C., is adopted as the opinion of this court. The judgment is affirmed.

ANDERSON, P. J., RUDDY, J., and DOUGLAS W. GREENE, Special Judge, concur.